# IN THE SUPREME COURT OF IOWA

No. 10–1223

Filed October 21, 2011

**STATE OF IOWA,**

    Appellee,

vs.

**ORLANDO DAVID RODRIGUEZ,**

    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

Orlando David Rodriguez appeals his conviction on a guilty plea for reckless vehicular homicide and the part of his sentence requiring payment of a law enforcement initiative surcharge. **COURT OF APPEALS DECISION AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND VACATED IN PART.**

Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, John P. Sarcone, County Attorney, and Steve Foritano and David Porter, Assistant County Attorneys, for appellee.

**MANSFIELD, Justice**.

Orlando Rodriguez appeals his conviction for reckless vehicular homicide based on his guilty plea, claiming he received ineffective assistance of counsel because there was no factual basis to support his plea. We granted further review in this case to address whether an active participant in a drive-away theft of gasoline can be found guilty of reckless vehicular homicide if he was not driving the car when the accident occurred. We find that a passenger can be responsible as a party to the crime under a joint criminal conduct theory and that this case had a factual basis to support the defendant's plea. Therefore, we affirm the defendant's conviction.

Rodriguez also appeals the part of his sentence requiring payment of a $125 fine for a law enforcement initiative surcharge. We agree there is no statutory authority to apply that fine to vehicular homicide and vacate this portion of the defendant's sentence.

## I. Background Facts and Proceedings.

According to the minutes of testimony, the evidence presented at the preliminary hearing, and the transcript of what became the guilty plea hearing, on September 23, 2009, at approximately 5 p.m., defendant Orlando Rodriguez (Rodriguez) and his brother Santos committed a drive-away theft of gasoline from the Casey's General Store located in the 4300 block of Park Avenue in Des Moines. A Casey's security camera captured the theft in detail as well as the subsequent fatal collision that occurred during their attempt to flee the gas station. The video shows Rodriguez pumping gas while Santos remained ready at the wheel, with the vehicle's brake lights flashing on and off. When Rodriguez finished pumping, instead of paying, he quickly jumped back into the car which immediately sped onto Park Avenue without slowing down to check for or

yield to traffic. Rodriguez admitted to an investigating officer that it had been the brothers' intention to steal gas.

The security video shows that the vehicle's brake lights never illuminated after it left the pumping area, the vehicle was driven at a faster speed than the other cars that departed the gas station before it, and the vehicle appeared to be accelerating as it turned out of the gas station onto a busy street at a busy time of day. Eyewitnesses confirmed that the brothers' Ford Explorer was traveling at a high rate of speed.

According to witnesses, as the brothers' Explorer raced out onto Park Avenue, it pulled directly into the path of a motorcyclist, Bruce Mundy. A witness reported that Mundy was driving his motorcycle along Park Avenue at a safe and appropriate speed; if anything, Mundy was causing traffic to slow behind him. Although Mundy tried to swerve to avoid a crash, he was unsuccessful, and the fast-moving Explorer struck and killed him.

Rodriguez immediately jumped out of the Explorer and briefly checked on Mundy. He helped his brother Santos, who has only one leg, out of the Explorer and handed him his walker. Rodriguez then fled the scene of the accident on foot. Rodriguez was arrested soon afterward while hiding in the nearby neighborhood. After Rodriguez was apprehended, personal identification papers that he had apparently thrown away while fleeing were also retrieved.

An arresting officer observed signs of marijuana intoxication on both Rodriguez and his brother: bloodshot, watery eyes; white coatings on their tongues; and poor performance on a horizontal gaze nystagmus test. The officer therefore requested urine samples from each brother. Both of them tested positive for marijuana at the time of the crash. When apprehended, Rodriguez told police that he, not his brother, had

been the driver at the time of the collision with the motorcycle. The Casey's video later confirmed otherwise.

On October 29, 2009, the State's trial information charged both brothers with Count I: homicide by vehicle-OWI, a class "B" felony in violation of Iowa Code section 707.6A(1) (2009); Count II: homicide by vehicle-reckless, a class "C" felony in violation of Iowa Code section 707.6A(2); and Count III: involuntary manslaughter, a class "D" felony in violation of Iowa Code section 707.5(1). The information accused each brother of committing these crimes "individually by joint criminal conduct, or by aiding and abetting another." Both accomplice theories were mentioned by the prosecution again during the October 13, 2009 preliminary hearing.

Rodriguez's trial was set for May 10, 2010, but before jury selection was completed, the parties reached a plea agreement and Rodriguez entered an *Alford*[1] plea of guilty to Count II only. The plea colloquy included the following exchange:

> THE COURT: . . . For Homicide by Vehicle, as a Result of Reckless Operation, the State would have to prove that . . . you or someone you aided and abetted, unintentionally caused the death of Bruce Mundy by operating a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or their property. . . .
>
> . . . .
>
> Okay. Now you're actually entering what we call an <u>Alford</u> plea of guilty. And what that means is you are not going to tell me that, yes, you, in fact, are guilty of this crime as charged. But what you are telling me is this: You are telling me that you have reviewed, with your attorney, the

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). An *Alford* plea allows a defendant to plead guilty to a crime without admitting to the underlying facts that establish the crime. "[W]hen a defendant enters an *Alford* plea, he . . . does not admit participation in the acts constituting the crime. Though the defendant does not admit guilt, he . . . may voluntarily . . . consent to the imposition of a sentence." *State v. Burgess*, 639 N.W.2d 564, 567 n.1 (Iowa 2001) (citation omitted).

evidence that the State has and will present against you in this case. And having done that, you are concerned that the evidence the State has is strong evidence of actual guilt in this matter. And what you want to do is you want to accept the plea bargain that the State has offered you because you have much more to gain by taking the plea bargain than you would have by going to the trial and taking your chances with the jury. Do you understand what I am saying?

DEFENDANT: Yes, sir.

THE COURT: Okay. Do you feel—I am going to be more specific—that it is in your best interest to enter into this plea?

DEFENDANT: Yes, sir.

. . . .

THE COURT: Do you recognize that there is strong evidence of actual guilt against you in this matter and that there is, you know, a very good risk or likelihood that a jury could find you guilty of Count I, which is a much more serious charge? Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: And you do want to take advantage of this guilty plea?

DEFENDANT: Yes, sir.

THE COURT: Okay. Now, are you fully satisfied with the advice and services of your lawyer?

DEFENDANT: Yes, sir.

THE COURT: Notwithstanding what you have told me, I will let you withdraw your guilty plea, and you could still have a jury trial with all of the rights that I have discussed with you. Or do you still want to enter this Alford guilty plea?

DEFENDANT: Yes, sir. I want to enter the plea.

The district court later found that Rodriguez understood the charge, the penal consequences, and the rights being waived; that there was a factual basis for the plea; and that the plea was voluntary.

As part of the plea agreement, on June 30, 2010, the State filed a notice and intent not to prosecute and order of dismissal for Counts I and III. On June 16, 2010, Rodriguez filed a motion in arrest of judgment on Count II, but withdrew this motion at his sentencing hearing on June 23, 2010. At that hearing, he was sentenced to ten years in prison, restitution of $150,000, a suspended fine of $1000, and a law enforcement initiative surcharge of $125. The sentence was amended on August 4, 2010, to include additional restitution of $18,065.72 to the Crime Victim Compensation Program.

Rodriguez timely filed a notice of appeal on July 20, 2010. The appeal raised two issues. First, Rodriguez challenged his conviction, claiming that there was no factual basis to support his guilty plea to homicide by vehicle-reckless. This matter was raised as a claim of ineffective assistance of counsel. Second, Rodriguez maintained that the district court imposed an illegal sentence by levying a $125 law enforcement initiative surcharge.

In a brief opinion, the court of appeals affirmed Rodriguez's conviction, but vacated his sentence with respect to the $125 surcharge. We granted further review.

**II. Standard of Review.**

We review claims of ineffective assistance of counsel de novo. *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010). To succeed on an ineffective-assistance-of-counsel claim, a defendant must show by a preponderance of the evidence that: "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell,* 743 N.W.2d 185, 195 (Iowa 2008). "We can affirm on appeal if either element is absent." *State v. McPhillips*, 580 N.W.2d 748, 754 (Iowa 1998). "Our review of the district court's sentence is limited to correction of errors at

law." *State v. Morris*, 416 N.W.2d 688, 689 (Iowa 1987); Iowa R. App. P. 6.907.

**III. Ineffective-Assistance-of-Counsel Claim Based on Alleged Lack of Factual Basis for Guilty Plea.**

Rodriguez's failure to pursue a motion in arrest of judgment would normally prevent him from contesting his guilty plea on appeal. Iowa R. Crim. P. 2.8(2)(*d*). However, he is not precluded from challenging the validity of his plea under a claim of ineffective assistance of counsel. *State v. Brooks*, 555 N.W.2d 446, 448 (Iowa 1996). Ineffective-assistance claims are an exception to our normal rules of error preservation. *State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982). Such claims are generally preserved for postconviction proceedings unless there is a satisfactory record upon which to draw a conclusion. *State v. Oetken*, 613 N.W.2d 679, 683 (Iowa 2000). The record in this case is sufficient for resolution on direct appeal.

The specific ineffectiveness claim raised by Rodriguez is that there was no factual basis under Iowa Code section 707.6A(2) to support his plea to reckless vehicular homicide. *See* Iowa R. Crim. P. 2.8(2)(*b*) (requiring a factual basis for guilty pleas). If this is true, then his counsel failed to perform an essential duty both in allowing the plea to be made and in failing to pursue a motion in arrest of judgment to challenge it. *State v. Ortiz*, 789 N.W.2d 761, 764–65 (Iowa 2010). Prejudice would be presumed. *Id.* "[U]nder no circumstances may a conviction upon plea of guilty stand if it appears that the facts of the charge do not state a violation of the statute under which the charge is made." *State v. Mitchell*, 650 N.W.2d 619, 621 (Iowa 2002). Therefore, to succeed on the essential duty element of his ineffective-assistance claim, Rodriguez must demonstrate the record lacks a factual basis to support his guilty plea to

reckless homicide by vehicle. Conversely, if there is a factual basis for the plea, then Rodriguez's ineffective-assistance claim must fail because "counsel has no duty to raise an issue that lacks merit." *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004); *accord Ortiz*, 789 N.W.2d at 768.

The law requires that the factual basis for Rodriguez's plea be disclosed in the record. *Ortiz*, 789 N.W.2d at 767. The standard for a sufficient factual basis is only "that the facts support the crime, 'not necessarily that the defendant is guilty.'" *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001) (quoting 1A Charles Alan Wright, *Federal Practice and Procedure* § 174, at 199 (1999)); *see also Ortiz,* 789 N.W.2d at 768 ("[T]he record does not need to show the totality of evidence necessary to support a guilty conviction, but it need only demonstrate facts that support the offense.").

**A. Recklessness.** Rodriguez pled guilty to homicide by vehicle-reckless in violation of Iowa Code section 707.6A(2), which states:

> 2. A person commits a class "C" felony when the person unintentionally causes the death of another by any of the following means:
>
> *a.* Driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

Iowa Code section 321.277 defines recklessness for driving purposes:

> Any person who drives any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving.
>
> Every person convicted of reckless driving shall be guilty of a simple misdemeanor.

*See also* Iowa Code § 702.16 (2009) ("A person is '*reckless*' or acts recklessly when the person willfully or wantonly disregards the safety of persons or property.").

In finding recklessness "we do not condition guilt on an intent to cause harm. We simply look to whether the actor embarked on an activity which is known, or should be known, to pose a substantial risk to others." *State v. Conroy*, 604 N.W.2d 636, 638 (Iowa 2000). "[R]eckless driving is not an intentional wrong in the sense that resulting harm is intended." *State v. Baker*, 203 N.W.2d 795, 796 (Iowa 1973). A driver is reckless when he knows or should know that his driving puts others at an unreasonable risk of harm. *State v. Conyers*, 506 N.W.2d 442, 444 (Iowa 1993).

Criminal culpability requires more than merely negligent behavior. *State v. Sutton*, 636 N.W.2d 107, 111 (Iowa 2001).

> To prove recklessness sufficient to support a conviction for vehicular homicide under section 707.6A(2)(*a*), the State must prove that the defendant engaged in conduct "fraught with a high degree of danger," conduct so obviously dangerous that the defendant knew or should have forseen that harm would flow from it.

*Id.* at 112 (quoting *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993)).

Because Rodriguez was not the driver of the vehicle that killed Mundy, we must determine first whether there was a factual basis for concluding the Explorer was driven recklessly and then whether Rodriguez could have been considered an accomplice. Since Rodriguez made an *Alford* plea, we cannot rely upon his in-court admissions to establish these facts. Instead, we look to the rest of the record including the minutes of testimony to see whether sufficient facts were available to justify counsel in allowing a plea and the court in accepting it. *See Ortiz*, 789 N.W.2d at 767–68 (indicating that "[t]he factual basis must be

contained in the record, and the record, as a whole, must disclose facts to satisfy all elements of the offense"); *State v. Carter*, 582 N.W.2d 164, 166 (Iowa 1998) (stating that "we consider the entire record before the district court"); *Brooks*, 555 N.W.2d at 448 (same).

The minutes of testimony provide a factual basis for concluding the crash that killed Mundy was caused by the reckless driving of Santos. The minutes show that Santos, while under the influence of a controlled substance, accelerated out of the Casey's to get away following the theft of gasoline, did not stop or slow down at all, and pulled directly into the path of Mundy who was driving at a safe and appropriate speed.

**B. Accomplice Liability.** Next we consider whether a factual basis exists for concluding Rodriguez was criminally complicit in this activity.

In prior cases, we have recognized that nondrivers can be found guilty of vehicular homicide in certain circumstances. In *State v. Satern,* for example, we upheld a conviction for vehicular homicide even though it was unclear whether the intoxicated defendant or his intoxicated friend had operated the vehicle. 516 N.W.2d 839, 842–45 (Iowa 1994). Satern and the friend had spent the evening drinking and cruising between bars until the vehicle, owned by Satern, crossed the center line of a rural highway causing a fatal accident. *Id.* at 840. Regardless of who was the actual driver of the vehicle at the time of the accident, we found sufficient evidence to support Satern's conviction because a jury could "premise criminal culpability for vehicular homicide or injury by vehicle on a theory of vicarious liability." *Id.* at 842.

In *Satern*, the jury was charged under two theories—first, that Satern was the driver and, second, that he had engaged in joint criminal conduct. *Id.* The jury returned a general verdict of guilty. *Id.* at 840. In

holding there was sufficient evidence to support that verdict under the theory of joint criminal conduct (assuming Satern was not the driver), we emphasized that "the sum total of [the driver's] actions, from the time Satern put him behind the wheel of his truck to the point where he recklessly . . . collided with an oncoming car, furthered the crime of OWI." *Id.* at 844. "The subsequent crime [of vehicular homicide] was incidental to carrying out the illegal act [of OWI]." *Id.*

In *State v. Dalton*, we again upheld a vehicular homicide conviction based on vicarious liability. 674 N.W.2d 111, 117 (Iowa 2004). Dalton, a passenger in a truck driven by his brother, had an altercation with a third person who was half-inside the truck on the passenger side. *Id.* at 115. The driver sped away with the third person clinging to the truck and Dalton repeatedly punched him to break his grip until he fell to his death. *Id.* We affirmed Dalton's conviction for reckless vehicular homicide under an aiding and abetting theory. *Id.* at 117, 122.

Also, in *State v. Travis*, the court of appeals upheld the conviction of a motorcycle passenger for involuntary manslaughter on a theory of aiding and abetting because he allowed an untrained minor to drive. 497 N.W.2d 905, 908 (Iowa Ct. App. 1993). Travis knew the driver was a minor, the motorcycle was not in proper operating condition, and children were at risk in the busy residential neighborhood. *Id.* at 907. Nevertheless, he invited a fifteen-year-old to drive after sunset without headlights at an unsafe speed, resulting in the death of a six-year-old girl. *Id.* at 906. Under these conditions, the court held that Travis could reasonably foresee the possibility of an accident due to the driving he encouraged. *Id.* at 908; *see also State v. Youngblut*, 257 Iowa 343, 346, 132 N.W.2d 486, 487 (1965) (holding the defendant could be found guilty

of manslaughter because he agreed to drag race and the other drag racer's car collided with a third car, resulting in a fatality).[2]

Other jurisdictions have also upheld vehicular homicide convictions based on accomplice liability. In *State v. Hann*, a case whose facts bear some resemblance to the present case, Hann and another person, Waugh, used the drive-in window at a bank in a joint attempt to cash a stolen, forged check. 380 N.E.2d 1339, 1340 (Ohio Ct. App. 1977). When the bank immediately noticed the check was stolen, the two individuals fled by car. *Id.* Hann allowed Waugh, a minor who did not have a driver's license, to drive. *Id.* A high-speed chase later ensued, ultimately resulting in a fatality. *Id.* The court of appeals found sufficient evidence to sustain Hann's vehicular homicide conviction:

> After participating in a forgery, defendant continued to allow Waugh to operate the vehicle. Defendant knew that pursuit and the attendant risks inherent in high speed flight might follow. He could, therefore, properly be held responsible as an aider and abettor for the acts of his companion in attempting to make good their escape.

*Id.* at 1341. The court did note that Hann was aware Waugh was a minor and did not have a driver's license. *Id.* at 1340–41.[3]

---

[2]When the legislature codified the offense of vehicular homicide in 1986, *see* 1986 Iowa Acts ch. 1220 § 41, it provided that drag racing unintentionally causing the death of another would be a separate form of vehicular homicide. *See* Iowa Code § 707.6A(3).

[3]*See also United States v. Brown*, 22 M.J. 448, 450 (C.M.A. 1986) (upholding a guilty plea to involuntary manslaughter where the defendant's conduct "in turning over the operation of his car to an intoxicated person was itself culpably negligent"); *Stacy v. State*, 306 S.W.2d 852, 854 (Ark. 1957) (upholding the defendant's conviction as an accessory to involuntary manslaughter when the defendant "was riding immediately behind the truck with full knowledge of, and acquiescence in, [the truck driver's] wanton negligence and intoxicated condition, and the tragic results likely to flow therefrom"); *People v. Kemp,* 310 P.2d 680, 683 (Cal. Ct. App. 1957) (drag racer found to have committed manslaughter even though he had never spoken to the other driver whose vehicle struck a third car, killing a passenger); *Michel v. State*, 752 So.2d 6, 8, 12 (Fla. Dist. Ct. App. 2000) (upholding a passenger's conviction of vehicular homicide, even though he was not driving when the accident occurred, because he had convinced his codefendant to drive and knew that the vehicle was in an unsafe driving condition);

In this case the trial information charged Rodriguez under both theories of accomplice liability—aiding and abetting and joint criminal conduct. According to the aiding and abetting theory: "All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals." Iowa Code § 703.1.

Joint criminal conduct is defined as follows:

> When two or more persons, acting in concert, knowingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom, and each person's guilt will be the same as that of the person so acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

Iowa Code § 703.2.

In *Satern*, we discussed the distinction between aiding and abetting under section 703.1 and joint criminal conduct under section 703.2:

> The concepts of vicarious liability embraced in these two doctrines are quite distinct. Under section 703.1, the aider and abettor is held liable for the same crime which he or she has knowingly aided the principal in committing, "either by active participation in it or by some manner encouraging it prior to or at the time of its commission."

---

*State v. Marquez*, 238 P.3d 880, 883 (N.M. Ct. App. 2009) (holding that the guilty plea to vehicular homicide of a person who suggested his intoxicated friend should drive and keep partying with him was supported by a factual basis); *State v. Whitaker*, 259 S.E.2d 316, 319 (N.C. Ct. App. 1979) ("[W]hen a death results from the operation of a motor vehicle by an intoxicated person not the owner of that vehicle, the owner who is present in the vehicle and who with his knowledge and consent permits the intoxicated driver to operate the vehicle, is as guilty as the intoxicated driver."); *Eager v. Tennessee*, 325 S.W.2d 815, 822–23 (Tenn. 1959) ("The criminal negligence of the drunken driver is imputable to drunken occupants of the car when the evidence shows some degree of concert of action. . . . 'Hence, one may be an aider and abettor in involuntary manslaughter because of a common purpose to participate in the unlawful act the natural and probable result of which was to kill another.'" (quoting *Wade v. State*, 124 S.W.2d 710, 711 (Tenn. 1939))).

> Joint criminal conduct, on the other hand, takes the enterprise a step further. It contemplates *two* acts—the crime the joint actor has knowingly participated in, and a second or resulting crime that is unplanned but could reasonably be expected to occur in furtherance of the first one. Depending on the case, it may be appropriate for the court to instruct on both doctrines.

516 N.W.2d at 843 (citations omitted) (quoting *State v.Lott*, 255 N.W.2d 105, 107 (Iowa 1977), *overruled on other grounds by State v. Allen*, 633 N.W.2d 752, 756 (Iowa 2001)).

To prove aiding and abetting, the State would have had to show that Rodriguez " 'assented to or lent countenance and approval to the criminal act [vehicular homicide] either by active participation or by some manner encouraging it.' " *Dalton*, 674 N.W.2d at 117 (quoting *Sutton*, 636 N.W.2d at 112).

Under section 703.2, joint criminal conduct requires the State to prove four elements:

1. Defendant must be acting in concert with another.

2. Defendant must knowingly be participating in a public offense.

3. A "different crime" must be committed by another participant in furtherance of the defendant's offense.

4. The commission of the different crime must be reasonably foreseen.

*State v. Smith*, 739 N.W.2d 289, 294 (Iowa 2007) (quoting *State v. Jefferson*, 574 N.W.2d 268, 277 (Iowa 1997)). " '[I]n furtherance of' is not limited to acts done to promote or advance the underlying crime, but includes acts done 'while furthering' that offense." *Satern*, 516 N.W.2d at 844.

We think this case fits into a joint criminal conduct paradigm without much difficulty. Rodriguez admitted he and his brother went to the gas station with the intent of stealing gasoline, and the security video

recording confirmed they followed through on their plan. This satisfies the first two elements under section 703.2, demonstrating that Rodriguez acted "in concert with another" and "knowingly . . . participat[ed] in a public offense." *Smith*, 739 N.W.2d at 294 (interpreting Iowa Code § 703.2).[4] Santos then committed the "different crime" of vehicular homicide. His collision with Mundy was "in furtherance of the defendant's offense" of theft, in the sense that it occurred while Santos was "furthering" the offense by speeding away from Casey's. *See Satern*, 516 N.W.2d at 844. Furthermore, section 703.2 specifically provides that an act done in "escape" from the original offense is sufficient by itself to link the anchor crime to the secondary crime, making a participant in the former equally guilty of the latter.

Also, high-speed, reckless driving away from the scene of a gas theft that occurs during the day can be "reasonably foreseen," *Smith*, 739 N.W.2d at 294, and so the unintentional homicide that resulted from that flight was also reasonably foreseeable. Indeed, rapid flight by vehicle is arguably inherent in drive-away thefts of gasoline. Such thefts occur in open areas frequented by the public that are typically under surveillance. The stolen merchandise (i.e., the gasoline) goes directly into the vehicle and is inseparable from it. Hence, it can be expected that the perpetrators will drive away in their vehicle at a high rate of speed.

Rodriguez argues that the State's joint criminal conduct theory cannot serve as the factual basis for the plea because it was not

---

[4]*See* Iowa Code §§ 701.2 (defining "public offense" as "that which is prohibited by statute and is punishable by fine or imprisonment"), 701.8 (providing that misdemeanors are "public offenses"), 714.2(5) (providing that a theft of property not exceeding two hundred dollars in value is a simple misdemeanor); *see also State v. Klawonn*, 609 N.W.2d 515, 518 (Iowa 2000) (noting that a public offense that serves as the predicate for involuntary manslaughter may be a simple misdemeanor traffic offense).

mentioned during the guilty plea colloquy. Rather, the court told Rodriguez the State would have to prove that "you *or someone you aided and abetted*, unintentionally caused the death of Bruce Mundy by operating a motor vehicle in a reckless manner . . . ." However, joint criminal conduct was set forth as the first theory of accomplice liability in the trial information. It was also mentioned by the prosecution in the October 13, 2009 preliminary hearing. Thus, the *charge* to which Rodriguez pled guilty embraced the concept of joint criminal conduct. And Rodriguez has not challenged the sufficiency of the colloquy, only the factual basis for the plea. *See State v. Straw*, 709 N.W.2d 128, 137–38 (Iowa 2006) (discussing the ineffective-assistance-of-counsel requirements in the context of an alleged defect in the guilty plea colloquy).

In summary, Rodriguez cannot show that his attorney failed to perform an essential duty in failing to challenge the factual basis of his plea. Therefore we reject his claim of ineffective assistance of counsel.[5]

### IV. Law Enforcement Initiative Surcharge.

Rodriguez also appeals the part of his sentence requiring payment of a $125 law enforcement initiative surcharge. The court of appeals vacated this fine because there was no statutory authority to apply it with respect to vehicular homicide. Iowa Code section 911.3 authorizes this surcharge only for specifically enumerated criminal violations, and section 707.6A(2)(*a*) is not one of the listed offenses.[6] We agree with the court of appeals and therefore vacate this part of Rodriguez's sentence.

---

[5]We do not reach the question whether Rodriguez's guilty plea also has a factual basis under an aiding and abetting theory of accomplice liability.

[6]Iowa Code section 911.3 states:

> 1. In addition to any other surcharge, the court . . . shall assess a law enforcement surcharge of one hundred twenty-five dollars if an

**V. Conclusion.**

Rodriguez's plea had a factual basis, the district court properly accepted his plea, and his counsel was not ineffective for failing to challenge it. We affirm Rodriguez's conviction and sentence except for the part of the sentence imposing the law enforcement initiative surcharge.

**COURT OF APPEALS DECISION AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND VACATED IN PART.**

---

adjudication of guilt . . . has been entered for a criminal violation under any of the following:

    *a.* Chapter 124, 155A, 453B, 713, 714, 715A, or 716[;]

    *b.* Section 719.7, 719.8, 725.1, 725.2, or 725.3.