# IN THE COURT OF APPEALS OF IOWA

No. 13-1125
Filed July 30, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MAX K. ARNOLD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Timothy O'Grady, Judge.

        Defendant appeals his convictions claiming trial counsel rendered ineffective assistance. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Matthew D. Wilbur, County Attorney, Shelly Sedlak, Assistant County Attorney, and Stephanie Koltookian, Student Legal Intern, for appellee.

        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Max Arnold appeals his convictions for one count of multiple acts of child endangerment and one count of neglect or abandonment of a dependent person. Arnold maintains trial counsel was ineffective in failing to challenge the portion of his confession made after the detectives allegedly promised leniency. We conclude Arnold suffered no prejudice from counsel's inaction. Finding an adequate basis for Arnold's conviction without the challenged evidence, we affirm.

**I. Background Facts and Proceedings.**

On June 22, 2012, the State charged Arnold with multiple acts of child endangerment in violation of Iowa Code section 726.6A (2011) (requiring three or more acts of child endangerment), with neglect or abandonment of a dependent person in violation of section 726.3, and with willful injury causing serious injury in violation of section 726.3. On July 11, 2012, Arnold pleaded not guilty to all charges. On September 21, 2012, Arnold waived his right to a speedy trial. Arnold waived his right to a jury trial on February 19, 2013, and again at the outset of trial.

The charges against Arnold involve a single victim, L.W., the daughter of Stevie (mother) and Phillip (father). L.W. was born in January 2010 and was two years old from March through May 2012, the pertinent dates of the alleged offenses. Stevie and Arnold began living together in November 2011. L.W. lived with Stevie and Arnold for roughly an equal amount of time as L.W. lived with Phillip. Arnold assumed some caretaking duties of L.W., even when Stevie was

home. Arnold resided part-time in the household where L.W. lived between March 30 and May 7, 2012.

On March 30, 2012, L.W. was examined by her pediatrician, Dr. Dennis Jones. Dr. Jones "observed a second-degree burn to L.W.'s lower back and right buttock." Dr. Jones again saw L.W. on April 16, 2012. Dr. Jones observed bruising and "noticed L.W. was favoring her left leg when she walked." On May 4, 2012, Phillip noticed L.W.'s bruising and leg injury and decided to take L.W. to the emergency room. Dr. Jones observed L.W. had bruising on her neck and cheek and also observed swelling in L.W.'s groin area.[1] Child protective services was contacted and informed of L.W.'s injuries.

After a May 14, 2012 visit with Dr. Jones, L.W. was sent to an orthopedic surgeon in Omaha, Nebraska, for additional testing. The surgeon determined L.W. had a fractured femur that "required surgical repair and insertion of pins." Following surgical complications, L.W. underwent a second surgery to replace the pins. A third surgery was necessary to remove the pins. Ultimately, L.W. needed to learn to walk again.

On May 10, 2012, Detective Robinson of the Council Bluffs Police Department made contact with Stevie and Arnold and asked them to come in for interviews. During the interview with Detective Robinson, Arnold was asked about the injuries to L.W. Within the first forty-five minutes of the interview, Arnold admitted causing injuries to L.W.'s face and her groin/leg. Arnold admitted he did "cross the line" by slamming L.W. on the corner of the dresser because she was "out of control" after she fell out of bed. He also admitted that

---

[1] Dr. Jones was apparently called to the emergency room after the child was examined.

he had flicked her face. Arnold does not challenge this evidence on appeal and admits this unchallenged evidence supports two acts of child endangerment.

Arnold was also asked about an injury to L.W.'s neck and if he strangled her. However, during this part of the interview he consistently denied he intentionally strangled L.W., maintaining she was choking due to having her pajama bottoms wrapped around her neck and he tried to help her by pulling them off. Therefore, initially, Arnold did not admit to causing injuries to L.W.'s neck. During the interview with Robinson, Arnold also admitted putting L.W. in the deep freeze:

> I was watching her when Stevie [unintelligible] three girls, mine and her two girls, and then, those two were fighting, the older two, and it just got out of hand. I was kind of in a panicky mode or whatever, and [L.W.] had ended up falling down the basement steps following me down there . . . and I didn't realize it but concrete and everything like that, so I freaked out. Deep freezer was the closest thing to it, went to grab something, retardedly put her inside of it real quick just to grab something, then I realized that I needed a towel or something [because] it looked like she was bleeding so I stepped over way and she apparently sat down.

Later in the interview, Detective Schuetze joined Detective Robinson in questioning Arnold. Schuetze told Arnold to tell the whole story concerning L.W.'s neck injury or Arnold would look bad when the detectives spoke to the county attorney. Schuetze began questioning Arnold concerning L.W.'s neck injury and told Arnold that admitting to causing the neck injury would not change the charge against him. Robinson then told Arnold that the charge was child endangerment, a class "C" felony. In response to Arnold's question of whether he would have a felony on his record, Robinson replied that was up to the lawyers.

Arnold then asked "what's the most?" Robinson replied, "The most as far as time? I wouldn't even—ten years, I've never seen anybody get it. I've never—." Arnold then inquired, "What's the least?" Robinson replied, "The least? A year. And the most out of a year would be probation, time served, and any type of community service you can perform during that year." At that time, Arnold continued denying causing injury to L.W.'s neck and bottom.

Robinson explained to Arnold if he provided more information it would help with any possible plea agreement and added:

> Not that I can promise you what type of plea agreements you're going to get or would get. I'm not a lawyer, I'm not a judge. I don't make those decisions. But when a county attorney comes up to me and says, "What's this injury from? What's this injury from? What's this injury from?" And they're gonna ask the doctor before they ask me. And then they say, "Detective Robinson, in your interview did you cover this? Did you cover this? Did you cover this? Did you cover this? And I'm gonna say, "Yes, we did." "And were you able to explain away this, this, and this?" And from our interview today I'm gonna be able to tell them that I was able to explain this, I was able to explain this, but I was not able to explain this. And I was not able to explain this.

Schuetze claimed Arnold did not want to explain the neck and bottom injuries "even though it's the same charge."

Arnold alleges improper promises of leniency leading to impermissible admissions of child endangerment:

> Prior to the officers' promises, Arnold had admitted causing serious injury to L.W. by slamming her down, and to flicking her face, which resulted in bruising. The district court found both of these acts to meet the definition of child endangerment. But prior to the promises of leniency, Arnold had not admitted that he had left L.W. in the freezer too long, saying it was "retarded" that he had done that, but not intentional. He had also consistently maintained that the ligature marks [on her neck] were from an incident where L.W. had gotten wrapped up in her pajama bottoms and that he had not intentionally caused the injury.

Ultimately, Arnold admitted pulling the pajama bottoms harder because "she would not stop moving." Arnold also admitted to shaking L.W. and throwing her on the bed due to his anger with her.

On May 15, 2013, the district court found Arnold guilty of committing one count of multiple acts of child endangerment (three or more acts) and guilty of one count of neglect or abandonment of a dependent person. Pursuant to a motion for judgment of acquittal, the court dismissed the charge of willful injury causing serious injury because the State failed to "prove beyond a reasonable doubt that Arnold had the specific intent to cause serious injury."

On July 3, 2013, Arnold was sentenced to a period not to exceed fifty years for his multiple-acts-of-child-endangerment conviction and to a period not to exceed ten years for his neglect-or-abandonment-of-a-dependent-person conviction. The district court ordered the sentences to run concurrently. Arnold appeals.

**II. Standard of Review.**

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims for ineffective assistance of counsel de novo. *State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Discussion.**

To succeed on his ineffective-assistance claim, Arnold must show by a preponderance of the evidence (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *See Rodgriguez*, 804 N.W.2d at 848. To prove counsel failed to perform an essential duty, Arnold must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). In doing so, Arnold must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 689. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006). We can affirm if either prong is absent and need not engage in both prongs of the analysis if one prong is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010).

"Ineffective assistance of counsel claims are an exception to our normal rules of error preservation." *Rodriguez*, 804 N.W.2d at 848. We generally preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings. *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011). "Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). We prefer to reserve such claims for development of the record and to allow trial counsel to defend against the charge. *Id.* If the record is inadequate to address the claim on direct appeal, we must preserve the claim for a postconviction-relief proceeding,

regardless of the potential viability of the claim.[2] *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). We find the record adequate to address Arnold's claim trial counsel was ineffective in failing to challenge a portion of Arnold's confession on the basis that it was a product of improper promises of leniency. *See State v. Howard*, 825 N.W.2d 32, 40 (Iowa 2012) (stating statements induced by promises of leniency are inadmissible).

We conclude, even if Arnold can prove his counsel failed to perform an essential duty, under these facts there was no prejudice resulting from counsel's failure. To prove Arnold was guilty of multiple acts of child endangerment, the State was required to demonstrate Arnold engaged in conduct constituting three or more acts of child endangerment. Iowa Code § 726.6A. Arnold concedes two acts of child endangerment arising from the groin/leg injury and the facial bruising but challenges the evidence of a third act of child endangerment.

To prove child endangerment under section 726.6(1)(a), the State must show the defendant "knowingly act[ed] in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety." Knowledge under section 726.6(1)(a) is "appreciation of the risk to the child or minor" created by the defendant's conduct. *State v. Millsap,* 704 N.W.2d 426, 430 (Iowa 2005). Knowledge may be proved by direct evidence and also "by reasonable inferences drawn from the circumstances surrounding the accident." *Id.*

---

[2] *See also* Iowa Code § 814.7(3) (providing "[i]f an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is inadequate to decide the claim or may choose to preserve the claim for determination under chapter 822.").

Upon our review of the interview recording, Arnold admitted putting L.W. in a freezer prior to the alleged improper promises of leniency. Arnold's statements after the alleged improper promises of leniency simply expanded on the freezer injury and neck injury. Statements made by a defendant before a promise of leniency are not inadmissible because of later promises. *State v. Madsen*, 813 N.W.2d 714, 727 (Iowa 2012).

Even without Arnold's challenged admission, the State presented overwhelming evidence to prove a third act of child endangerment. Stevie testified Arnold "stood [L.W.] in the deep freeze because we didn't have ice packs at the time and was holding frozen stuff up to her bottom and—to help it, and he went to get a towel, and when he came back, she was sitting in the deep freeze." Stevie also testified there were no towels in the basement and the "laundry was upstairs." Dr. Jones explained that L.W. suffered a freezer burn from sitting down in the freezer without underwear or pants. In his opinion, L.W. suffered "a second-degree burn on her right buttock and a little bit on the right side of her back."

Thus, the evidence established Arnold placed a two-year-old who was not wearing any underwear or pants in a freezer and left her unattended in the freezer when he walked away. Such an act is dangerous and creates a substantial risk of physical injury to the child arising from the cold. Because Arnold walked away from L.W. with the knowledge she was in the freezer without much clothing, we can reasonably infer he understood the substantial risk of

injury to L.W.[3]  Accordingly, even without the challenged evidence, the State's other evidence is sufficient to prove Arnold knowingly subjected L.W. to a substantial risk of harm constituting a third act of child endangerment.

Because we find sufficient evidence of a third act of child endangerment under section 726.6(1)(a), Arnold was not prejudiced by trial counsel's failure to seek suppression of statements made after alleged improper promises of leniency.  We affirm.

**AFFIRMED.**

---

[3] Our supreme court has approved the following jury instruction in regard to "knowledge" as an accurate statement of the law:

> The term "knew" or "knowledge" as used in these instructions refers to the defendant's state of mind at the time or just prior to the commission of the offense with which he is charged.  Because it is a state of mind, it is seldom capable of direct or positive proof.  Ordinarily it must be determined from the words and conduct of the person and the just and reasonable inferences which may be drawn therefrom in accordance with common experience and observation.  In determining the knowledge of a person, you have a right to infer that he knew the natural and probable consequences of his voluntary acts which ordinarily follows such acts.

*State v. Rinehart*, 283 N.W.2d 319, 321 (Iowa 1979) (emphasis added).