## IN THE COURT OF APPEALS OF IOWA

No. 14-2019
Filed September 23, 2015

**JUNE BETTY LYMAN,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.

June Lyman appeals from the district court's denial of her application for postconviction relief. **AFFIRMED.**

Priscilla E. Forsyth, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Patrick Jennings, County Attorney, and Terry Ganzel, Assistant County Attorney, for appellee State.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, Chief Judge.**

June Lyman appeals from the district court's denial of her application for postconviction relief (PCR). She maintains she received ineffective assistance from trial counsel. Specifically, Lyman argues trial counsel was ineffective (1) for failing to redact or object to the admission of a video showing her invoke her right to counsel and (2) for failing to call Dr. Fischer as a witness or lay the proper foundation for Dr. Fischer's report to be admitted as evidence. Because Lyman cannot establish she suffered prejudice, we affirm the district court's denial of her application for PCR.

**I. Background Facts and Proceedings.**

On May 15, 2006, police received an anonymous call reporting a dead body and requesting police assistance at a specific address. When the police arrived at the address, they found Lyman and the body of her husband, Leo. While officers were checking Leo's vitals, Lyman stated her husband deserved what he got, was a child molester, and she hoped he was dead. She also stated she had shot him and her fingerprints were all over the gun. When medical personnel confirmed Leo was dead, June said, "Yes, I did it. I shot him."

Lyman was read the *Miranda* warning and allowed to call her daughter-in-law before being transported to the police station. During transport, Lyman made numerous voluntarily incriminating statements, such as, "I shot the motherf*cker," "I've already admitted to you I killed him," and "I shot the f*cker. Hey, and I can't deny it. My fingerprints are on the gun." She also referenced her right to an attorney and her right to remain silent. The transport was recorded by the patrol car's video recording system.

Lyman was charged with murder in the first degree.

In preparation for trial, Lyman was interviewed and examined by Dr. Karla Fischer. Dr. Fischer was one of the only experts who personally interviewed Lyman. She opined about Lyman as a battered woman and her mental state at the time of the alleged offense.

The matter proceeded to trial. Lyman admitted she shot her husband four times and he died as a result of the shooting. She asserted the defense of diminished responsibility, arguing she was not responsible for first-degree murder.

The State played the full video recordings of Lyman's transport to the police station. Her counsel did not object or ask to redact any portion of the videos.

As part of Lyman's defense, several experts testified at trial. The experts reviewed Dr. Fischer's report and relied at least in part on that report in arriving at their opinions. Lyman's trial counsel did not call Dr. Fischer as a witness. When counsel offered the report as evidence, he failed to lay the appropriate foundation to have it admitted as being reasonably relied upon by another expert.

Following the close of evidence, the jury returned a verdict of guilty of murder in the second degree.

Lyman appealed her conviction, and our supreme court retained the appeal. In *State v. Lyman*, 776 N.W.2d 865, 879 (Iowa 2010), the court affirmed the conviction.

Lyman filed a pro se application for PCR on April 2, 2012. She was appointed counsel and amended her application.

On November 20, 2014, the district court denied Lyman's amended application. She appeals.

## II. Standard of Review.

Generally an appeal from a denial of an application for PCR is reviewed for corrections of errors at law. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). However, when an applicant asserts claims of a constitutional nature, our review is de novo. *Id.* Thus, we review claims of ineffective assistance of counsel de novo. *Id.*

## III. Discussion.

To prevail on a claim of ineffective assistance of counsel, Lyman must prove by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez,* 804 N.W.2d 844, 848 (Iowa 2011). To establish prejudice, Lyman must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See State v. McCoy*, 692 N.W.2d 6, 25 (Iowa 2005). Because Lyman has raised multiple claims of ineffective assistance of counsel, we look at the cumulative effect of the prejudice arising from those claims. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). Her claim fails if either element is lacking. *See Everett v. State,* 789 N.W.2d 151, 159 (Iowa 2010).

Here, Lyman cannot establish she was prejudiced by counsel's alleged errors because the jury ultimately accepted her defense. At trial, she admitted she shot her husband four times and he died as a result of the shooting. The only defense she presented was one of diminished responsibility. "The

diminished responsibility defense allows a defendant to negate the specific intent element of a crime by demonstrating due to some mental defect she did not have the capacity to form that specific intent." *Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008). In other words, Lyman's defense was that she could not form the specific intent necessary for a conviction of murder in the first degree.

"Evidence of diminished responsibility may not, however, negate general criminal intent, and is therefore not a defense to crimes which do not require proof of specific intent." *Id.* "It is well-settled law that murder in the second degree is a general intent crime only requiring proof of malice aforethought." *State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010). Thus, the defense was not applicable to the charge that she was ultimately convicted of, second-degree murder.

Lyman contends the result of her trial may have been different if the jury had not been allowed to see her invoke her right to counsel and/or if Dr. Fischer's report was admitted into evidence. However, Lyman does not explain how the admission of the report or exclusion of the pertinent portion of the video would cause the result of the proceeding to be different.[1] Because the jury ultimately accepted the defense the she presented at trial, Lyman cannot establish she suffered prejudice. We affirm.

**AFFIRMED.**

---

[1] The PCR court indicated it believed trial counsel had attempted to instruct the jury on the doctrine of jury nullification, which Iowa has rejected. *See State v. Willis*, 218 N.W.2d 921, 925 (Iowa 1974) ("Jury nullification exalts the goal of particularized justice above the ideal of the rule of law. We are persuaded the rule of law should not be subverted. A central theme in our constitutional system is that no man is above the law and all are equally accountable to it. The people are sovereign, but they exercise their sovereignty through government rather than juries. We hold juries should not be told they have a right to disregard the law given them in the court's instructions.").