# IN THE COURT OF APPEALS OF IOWA

No. 14-1637
Filed May 25, 2016

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**BENNIE JAMES LENOIR,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, John G. Linn, Judge.

Defendant appeals his convictions for four counts of delivery of crack cocaine, possession of crack cocaine with intent to deliver, and failure to affix a drug tax stamp. **AFFIRMED.**

Thomas Hurd of Glazebrook, Moe, & Hurd, LLP, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Bower, P.J., McDonald, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, Senior Judge.**

Defendant Bennie Lenoir was convicted of several drug charges related to four controlled buys of crack cocaine conducted by the Burlington Police Department using a confidential informant, Ken White. On appeal, Lenoir contends his trial counsel was ineffective in several respects.

## I. Background Facts & Proceedings

In the summer of 2013, White was approached by officers from the Burlington Police Department who were investigating a homicide. Although White was not a suspect, the officers believed he might have some knowledge useful to their investigation. During their meeting with White, the officers discovered he was in possession of crack cocaine. Subsequently, they recruited White to be a confidential informant. In exchange, White received the benefit of avoiding a drug charge.

White participated in four controlled buys at Lenoir's home. During each, the procedure was substantially similar. White and his vehicle were searched before the buy. A police officer would give White cash the officer could later identify. Officers would visually observe White enter Lenoir's home. Through the use of an audio recording device, the officers could listen to the conversation between White and Lenoir. Once the buy was complete, an officer would meet White, confirm the cash had been exchanged for crack cocaine, and enter the crack cocaine into evidence. On each occasion, an officer tested the purchased material to confirm it was, in fact, crack cocaine.

On September 3, 2013, police executed a search warrant at Lenoir's apartment. During the search, police found evidence indicating drug packaging

and distribution. The police also found cash they had given White to use in his controlled buys. Lenoir was arrested.

Lenoir was charged by trial information with four counts of delivery of crack cocaine, possession of crack cocaine with intent to deliver, and failure to affix a drug tax stamp. The trial information also alleged a sentencing enhancement based on Lenoir's prior felony conviction for delivery of a controlled substance.

The case proceeded to trial. Following trial, the jury found Lenoir guilty on all counts. He now appeals.

## II. Standard of Review

Claims of ineffective assistance of counsel are reviewed de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). To prevail on a claim of ineffective assistance of counsel, Lenoir must prove by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez,* 804 N.W.2d 844, 848 (Iowa 2011). To establish prejudice, Lenoir must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See State v. McCoy,* 692 N.W.2d 6, 25 (Iowa 2005). Lenoir's claim fails if either element is lacking. *See Everett v. State,* 789 N.W.2d 151, 159 (Iowa 2010). An attorney's improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006).

Furthermore, because tactical decisions by counsel must be judged within the context of the totality of the circumstances on a case-by-case basis, it is often necessary to preserve such allegations for postconviction proceedings so that the record can be more fully developed. *Id.*; *see also* Iowa Code § 814.7(3) (2013) ("If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim for [postconviction proceedings].").

### III. Analysis

#### a. Prosecutorial Misconduct

Lenoir first contends his counsel's failure to object to the State's line of questioning regarding the relationship with a confidential informant amounts to ineffective assistance. We find the record adequate to address this claim.

At trial, the State presented White as a witness. In his testimony, he described how he came to be a confidential informant. Lenoir's counsel cross-examined White. In doing so, counsel attacked White's credibility. This included questions related to the deal White received in exchange for his services as a confidential informant:

> Q. Now, it's a fact, isn't it, that you could stay out of prison by making controlled buys from Bennie Lenoir, is that part of the deal? A. Yes.
> Q. But you also have to testify in court, don't you? That's part of the deal too; isn't it? A. Yes.
> Q. And that's what you're doing today, isn't it? A. Yes.
> Q. And the county attorney has to be satisfied with what you have to say or you could still be charged, isn't that true? A. I'm not sure.
> Q. But you would agree that your contract with the drug task force requires you to testify today? A. Yes.

Q. And you would agree that they can file their charges if they don't feel you've lived up to that contract? A. I don't know.

On redirect, the State asked White questions along the same lines:

Q. Mr. Beres [Lenoir's trial counsel] spent some time questioning you about the agreement you reached with the drug task force . . . in exchange for not charging you with a drug charge; correct? A. Yes.

Q. And he asked you some questions about whether part of that agreement had something to do with my office and agreeing not to charge you; do you remember those questions? A. Yes.

Q. Is it true that my office never entered into any kind of agreement with you; is that correct? The county attorney's office never entered into any agreement with you? A. No.

Q. Is it correct that we did not enter into an agreement; is that correct? Do you understand what I'm saying to you? A. I'm not sure.

Q. Okay. You made an agreement with the police officers; correct? You have to say yes— A. Yes.

Q. —or no?

Q. Is it correct you never met with anybody from my office until you and I met for the deposition, is that right? A. Yes.

Q. Okay. Mr. Beres made a statement to you, his words were something to the effect that—something to the effect that the county attorney would have to be satisfied with your answers; do you remember him saying—using that phrase or something like that phrase? A. No.

Q. Ok. Have I ever—you and I did meet prior to your testimony here today, is that true? A. Yes.

Q. And what did I tell you that I was interested in you saying at trial, what did I tell you I wanted you to tell. A. The whole truth.

The State contends the purpose of these questions was to clarify that any deal White entered into was with the police department and not with the county attorney's office. Lenoir contends the State's line of questioning amounted to prosecutorial misconduct, because drawing this distinction between the police department and county attorney's office suggested to the jury that White's deal was not binding upon the county attorney, and by such suggestion, the State improperly vouched for White's credibility. He argues the jury might believe

White obtained no benefit from the State for his cooperation and therefore had no ulterior motive for his testimony.

To establish a due process claim based on prosecutorial misconduct, Lenoir must prove (1) misconduct that (2) resulted in prejudice to such an extent the defendant was denied a fair trial. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). A trial can be unfair to the defendant even when the prosecutor acts in good faith. *Id.* In determining prejudice we look at several factors within the context of the entire trial. *Id.* Those factors are: (1) the severity and pervasiveness of the misconduct, (2) the significance of the misconduct to the central issues in the case, (3) the strength of the State's evidence, (4) the use of cautionary instructions or other curative measures, and (5) the extent to which the defense invited the misconduct. *Id.*

Lenoir argues the misconduct in this case is the prosecution's presentation of "an inaccurate picture" to the jury vis-à-vis White's arrangement with the State. On our de novo review we disagree. A reasonable interpretation of the prosecution's line of questioning is that it was intended to refute the earlier cross-examination by the defense, suggesting the county attorney needed to be "satisfied" by White's testimony. Assuming no such coercion existed—and Lenoir does not argue that it did—the prosecution's questions arguably nudged the jury towards a *more* accurate picture of White's arrangement.

We conclude Lenoir has not proved misconduct. Because we do not find any prosecutorial misconduct, we accordingly find Lenoir's counsel was not ineffective for failing to object to the alleged misconduct. *See State v. Ray*, 516

N.W.2d 863, 866 (Iowa 1994) ("It is axiomatic that ineffectiveness of counsel may not be predicated on the filing of a meritless motion.").

### b. Voice Identification

Lenoir next contends his counsel was ineffective for failing to object when the State's witnesses provided a voice identification of the defendant. Lenoir argues this was beyond the scope of the minutes of testimony. Again we find the record adequate to address this issue.

The minutes of testimony must include "a full and fair statement of the witness'[s] expected testimony." Iowa R. Crim. P. 2.5(3). "The purpose of the rule is to eliminate claims of foul play and provide an accused meaningful information from which a defense may be prepared." *State v. Wells*, 522 N.W.2d 304, 307 (Iowa Ct. App. 1994). Precision is not required. *Id.* The prosecutor must "adequately alert the defendant to the source and nature of the testimony, and place defendant on notice of the need for further investigation of the particular details" of the expected testimony. *Id.*

The minutes of testimony in this case include the statements that the detectives knew a person identified as "Bennie" to be Lenoir, that Lenoir is heard conversing with White "over the wire," that officers would testify "to any photos/audio/video recordings taken during the course" of investigation, and that "recordings obtained from the law enforcement agency" would be introduced into evidence. Notice of audio recordings and conversations heard "over the wire" adequately provides notice the officers would identify Lenoir's voice in discussing his role in those recordings. An objection on this ground would have been

meritless, and failure to so object provides no basis for an ineffective-assistance claim. *See Ray*, 516 N.W.2d at 866.

### c. Pro Se Claims

In his pro se brief, Lenoir raises three additional claims of ineffective assistance. The first allegation is his counsel was ineffective for failing to challenge White's credibility. We disagree for the reasons stated above.

Lenoir's second and third allegations relate to the constitutionality of the executed search warrant and the jury-selection process. We do not have the search warrant before us in the record, and reporting of voir dire was waived. For those reasons, the record is inadequate for us to address these latter two claims. They are reserved for possible postconviction proceedings. *See* Iowa Code § 814.7(3).

**AFFIRMED.**