# IN THE SUPREME COURT OF IOWA

No. 34 / 05-2072

Filed September 7, 2007

**STATE OF IOWA,**

Appellee,

vs.

**CHRISTOPHER BARRON SMITH,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L. Larson, Judge.

Both parties seek further review of a court of appeals decision affirming all but one of the defendant's convictions and granting him a new trial on one of the convictions. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Jon Jacobmeier, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

Relevant to this appeal, a jury returned a verdict finding Christopher Barron Smith guilty of assault with intent to inflict serious injury, willful injury causing serious injury, assault on a peace officer while using or displaying a dangerous weapon, and assault while participating in a felony.[1] The district court instructed the jury it could find Smith guilty of these crimes either as a principal, an aider and abettor, or under the theory of joint criminal conduct. Smith objected to the instructions on the ground there was insufficient evidence to submit these charges under the theory of joint criminal conduct. Because we agree the evidence was insufficient to submit these charges under the theory of joint criminal conduct, and the district court only instructed the jury to return a general verdict for each charge, we reverse Smith's conviction as to these crimes and remand the case for a new trial on the charges of assault with intent to inflict serious injury, willful injury causing serious injury, assault on a peace officer while using or displaying a dangerous weapon, and assault while participating in a felony.

## I. Background Facts.

In viewing the evidence in the light most favorable to the State, a reasonable jury could have found the facts as follows. On November 9, 2004, Colteen Dineen planned to travel from his home in eastern Nebraska to Chicago, Illinois to steal cars. Dineen enlisted the help of Jeremy Clark in exchange for a handgun and a Camaro. Smith wanted to leave town and decided to go along for the trip. Smith did not know the purpose of the trip.

---

[1]The jury also found Smith guilty of first-degree theft. Smith did not appeal his theft conviction.

The three men planned to travel in a Lincoln Navigator driven by Dineen. Dineen stole the Navigator from a car dealership a few weeks prior to November 9. Although Clark assumed the Navigator was stolen, Dineen did not tell either Smith or Clark that it was stolen. Smith thought the Navigator was owned by Dineen's aunt and that Dineen was making car payments to her.

Prior to beginning the trip, Smith helped Dineen load the vehicle with handguns, rifles, and shotguns. Before leaving, at approximately 10 p.m., Dineen, Clark, and Smith made stops at a Wal-Mart, a fast food restaurant, and a friend's house. They also used methamphetamine prior to leaving Nebraska.

Dineen drove the Navigator with Smith sitting in the front-passenger seat and Clark sitting in the rear-bucket seat located behind the front-passenger seat. When they left Nebraska a handgun was lodged between Smith's seat and the console separating the driver's seat from the front-passenger's seat.

At approximately 3 a.m. on November 10, Brian Loomis, a Pottawattamie County deputy sheriff, was traveling westbound on Interstate 80 running radar. Loomis' radar set the speed of the Navigator traveling eastbound on Interstate 80 at about eighty-six miles-per-hour in a sixty-five mile-per-hour zone. Loomis turned through the highway median and stopped the vehicle. Loomis approached the vehicle from the passenger side, asked Dineen for his license, and requested the vehicle's registration. Dineen told Loomis he did not have his driver's license with him. Instead, he provided Loomis with his correct name, social security number, and address. Smith located the car registration in the glove box and gave the registration to Loomis.

Loomis returned to his patrol car and ran the license plate number through his dispatch. After discovering the license plates did not match the Navigator's registration information, Loomis requested backup.

While Loomis waited for backup, Dineen, Smith, and Clark discussed their situation and options. At that time Dineen told Smith and Clark the Navigator and guns were stolen. Dineen also told Smith and Clark he would "take the blame for everything." Smith was concerned because he was on probation and Clark was concerned because he was going through drug court. Smith and Clark believed if apprehended in a stolen vehicle with stolen guns and illegal drugs, they would go to prison. Smith and Clark did not want to go to prison.

After the three decided imprisonment was not a viable option, they began to discuss other options. First, the three men ruled out driving away because the Navigator could not outrun the police vehicle. Next, they talked about backing the Navigator into the deputy or his vehicle as he reapproached them. Clark and Smith also considered shooting out the passenger-side window when the deputy came back to the Navigator.

After waiting about nine minutes for backup, Loomis walked toward the Navigator on the driver's side and ask Dineen to step out of the vehicle. As the deputy approached the Navigator, Dineen yelled to both Smith and Clark to hand him a gun. Smith and Clark found a handgun and one of them gave it to Dineen. As soon as Loomis asked Dineen to step out of the vehicle, Dineen opened the door and shot Loomis four times. Dineen, Clark, and Smith then fled from the scene in the Navigator.

Loomis was able to get back to his squad car and report he had been shot. Loomis sustained multiple gunshot wounds to his left upper extremity, one bullet wound to his left posterior chest, and a wound to his

right upper extremity. These injuries were life threatening and he likely would not have been able to survive without surgery. These injuries also caused prolonged impairment of Loomis' left hand and arm function.

The authorities ultimately apprehended Dineen, Smith, and Clark. Dineen pled guilty to attempted murder and received a twenty-five-year sentence. As part of his plea agreement, Dineen agreed to testify truthfully in the cases of Clark and Smith in exchange for the State dropping all other charges against him. Clark pled guilty to aiding and abetting the reckless use of a firearm causing serious injury and received a ten-year sentence.

## II. Proceedings.

The State charged Smith in five counts. In count I the State charged Smith with attempt to commit murder in violation of Iowa Code sections 707.11, 702.7, 702.18(*b*), 703.1, and/or 703.2 (2003). In count II the State charged Smith with willful injury causing serious injury in violation of Iowa Code sections 708.1, 708.4(1), 702.18(*b*), 703.1, and/or 703.2. In count III the State charged Smith with assault on a peace officer while using or displaying a dangerous weapon in violation of Iowa Code sections 708.3A(2), 703.1, and/or 703.2. In count IV the State charged Smith with assault while participating in a felony in violation of Iowa Code sections 708.3, 714.2(1), 703.1 and/or 703.2. In count V the State charged Smith with theft in the first degree in violation of Iowa Code sections 714.1(4), 714.2(1), 703.1, and/or 703.2.[2]

The court instructed the jury it could find Smith guilty of each charge either as a principal, an aider and abettor, or under the theory of joint

---

[2]After leaving the scene of the shooting, Smith drove the Navigator. We assume exercising control of the Navigator after learning it was stolen forms the basis for Smith's theft conviction because on appeal the State does not argue that Smith committed the theft prior to the shooting or that the theft should be used as the separate, underlying public offense to form the basis of guilt under a joint criminal conduct theory.

criminal conduct. As to count I the jury found Smith guilty of assault with intent to inflict serious injury, a lesser included offense of the charge of attempted murder. Under counts II–V the jury found Smith guilty of the charged offenses: willful injury causing serious injury, assault on a peace officer while using or displaying a dangerous weapon, assault while participating in a felony causing serious injury, and first-degree theft. The court merged counts I and II, sentencing Smith on count II and not count I.

Smith appealed alleging the district court erred in denying his motion for judgment of acquittal and in overruling his objection to the joint criminal conduct jury instruction. He also claimed he was denied effective assistance of counsel when his attorney failed to object to the aiding and abetting jury instruction. In his appeal Smith claims there is insufficient evidence to find him guilty of assault with intent to inflict serious injury, willful injury causing serious injury, assault on a peace officer while using or displaying a dangerous weapon, and assault while participating in a felony. We transferred the case to the court of appeals.

The court of appeals affirmed the district court on all issues except Smith's willful injury conviction. It reversed the willful injury conviction because the court of appeals found Smith's trial attorney was ineffective in not objecting to the aiding and abetting instruction because the instruction did not mention the concept of specific intent, even though willful injury is a specific intent crime.

Both Smith and the State petitioned for further review. This court granted both petitions.

**III. Issues.**

Although the parties raise various issues on appeal, the issues surrounding the district court's giving of the joint criminal conduct jury instruction disposes of this appeal.

**IV. Analysis.**

With respect to the convictions Smith now appeals, the district court instructed the jury it could find Smith guilty as a principal, an aider and abettor, or because of his joint criminal conduct for the crimes of assault with intent to inflict serious injury, willful injury causing serious injury, assault on a peace officer while using or displaying a dangerous weapon, and assault while participating in a felony. The district court gave the following jury instruction on joint criminal conduct:

> When two or more persons act together and knowingly commit a crime, each is responsible for the other's acts during the commission of the crime or escape from the scene. The Defendant's guilt is the same as the other person's(s') unless the act(s) could not reasonably be expected to be done in aiding the commission of the crime.

Smith objected to the instruction, arguing there was no evidence to support the submission of a joint criminal conduct instruction because Smith did not knowingly participate in a previous, underlying public offense that constituted a different crime in furtherance of Dineen's offenses. The court overruled Smith's objection.

Smith then asked the court to instruct the jury on the specific underlying offense that Smith committed to support the giving of the joint criminal conduct instruction. The court refused to do so. When instructing the jury, the court did not ask whether it was finding Smith guilty as a principal, an aider and abettor, or because of his joint criminal conduct. In

other words, the court instructed the jury to return a general verdict for each charge.

When a defendant challenges the sufficiency of the evidence to support his conviction this court's review is for correction of errors at law. *State v. Bower*, 725 N.W.2d 435, 440–41 (Iowa 2006). This court will uphold a guilty verdict if substantial evidence supports the verdict. *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). Evidence is substantial if, in the light most favorable to the State, the evidence can convince a rational jury the defendant is guilty of the charged crime beyond a reasonable doubt. *Id.*

In 1994 this court distinguished the commission of a crime by means of aiding and abetting from the commission of a crime by means of joint criminal conduct. *State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994). There we stated:

> Under section 703.1, the aider and abettor is held liable for the same crime which he or she has knowingly aided the principal in committing, "either by active participation in it or by some manner encouraging it prior to or at the time of its commission." Joint criminal conduct, on the other hand, takes the enterprise a step further. It contemplates *two* acts—the crime the joint actor has knowingly participated in, and a second or resulting crime that is unplanned but could reasonably be expected to occur in furtherance of the first one. Depending on the case, it may be appropriate for the court to instruct on both doctrines.

*Id.* (internal citations omitted). Prior to *Satern*, this court blurred the line between the commission of a crime by means of aiding and abetting and joint criminal conduct. In one decision this court held a defendant was guilty of first-degree murder under the theory of joint criminal conduct when the defendant prepared the lines to tie up the murder victims and brought the actual perpetrator to the site of the murder. *State v. Kern*, 307 N.W.2d 22, 28 (Iowa 1981). In another decision we held a defendant was guilty of false use of a financial statement under the theory of joint criminal

conduct when the defendant stole a purse, gave a credit card from the stolen purse to another person, accompanied that person into a video store, and was with that person when the stolen card was used to purchase merchandise. *State v. Thompson*, 397 N.W.2d 679, 681, 685–86 (Iowa 1986). There we said, "[t]he most we can derive from defendant's argument in the present case is that perhaps [the joint criminal conduct instruction] was redundant in conveying to the jury the necessary elements of the crime." *Id.* at 685.

Under our present law in order for a person to be found guilty by reason of joint criminal conduct the State must prove the following elements:

1.  Defendant must be acting in concert with another.

2.  Defendant must knowingly be participating in a public offense.

3.  A "different crime" must be committed by another participant in furtherance of the defendant's offense.

4.  The commission of the different crime must be reasonably foreseen.

*State v. Jefferson*, 574 N.W.2d 268, 277 (Iowa 1997). " 'In furtherance of' is not limited to acts done to promote or advance the underlying crime, but includes acts done while furthering that offense." *Id.* (quoting *Satern*, 516 N.W.2d at 844) (internal quotation marks omitted).

Applying these elements to the record in the present case, we must first determine whether Smith knowingly participated in a public offense that was different from the crimes committed by Dineen when he shot the deputy. The State argued in its brief that "Smith knowingly participated, as an aider and abettor, in the crime of assault on a police officer while using or displaying a dangerous weapon" when he assisted Dineen in obtaining

the handgun used to shoot the deputy. This is the only separate, underlying public offense the State argues to support Smith's conviction under a joint criminal conduct theory.

The logical fallacy of the State's argument is twofold. First, knowingly participating in the crime of assault on a police officer while using or displaying a dangerous weapon is not a different crime to support a conviction for assault on a police officer while using or displaying a dangerous weapon.

Second, the act of assisting Dineen in obtaining the handgun used to shoot the deputy was an act done directly toward the commission of each of the offenses for which the jury convicted Smith. *See* Iowa Code § 702.13 (stating "[a] person is *'participating in a public offense,'* during part or the entire period commencing with the first act done directly toward the commission of the offense and for the purpose of committing that offense, and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers"). Therefore, the act of assisting Dineen in obtaining the handgun used to shoot the deputy is not a separate crime from the crimes charged to allow the jury under the theory of joint criminal conduct to find Smith guilty of assault with intent to inflict serious injury, willful injury causing serious injury, assault on a peace officer while using or displaying a dangerous weapon, and assault while participating in a felony.

Consequently, there was insufficient evidence to submit to the jury the State's claim that Smith was guilty of the crimes committed by Dineen when he shot the deputy by reason of Smith's joint criminal conduct.

### V. Disposition.

In *State v. Jackson*, this court stated when the district court erroneously gives a joint criminal conduct instruction in instances where the alleged multiple participants are either principals or aiders and abettors in the same crime, a reversal is not required as long as there is no opportunity for the defendant to be found guilty based on anything other than the defendant's own conduct as a principal or aider and abettor of the crime charged. 587 N.W.2d 764, 766 (1998) (citing *Thompson*, 397 N.W.2d at 685–86 and *Kern*, 307 N.W.2d at 28). The corollary to the rule announced in *Jackson* is that in instances where the alleged multiple participants are either principals or aiders and abettors in the same crime, a reversal is required if the district court erroneously gives a joint criminal conduct instruction and there is an opportunity for the jury to find the defendant guilty based on anything other than the defendant's own conduct as a principal or aider and abettor of the crime charged.

Unlike the circumstances in *Jackson*, here there was evidence crimes were committed that were separate from the shooting. These separate crimes involved the stolen guns, first-degree theft, and possession of methamphetamine. In its brief the State does not argue that any of these crimes are the separate, underlying public offense needed to support Smith's conviction under a joint criminal conduct theory. See Iowa R. App. P. 6.14(1)(*c*) (stating "[f]ailure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue"). Even though the State does not contend any of these crimes would qualify as the separate, underlying public offense needed to support Smith's conviction under a joint criminal conduct theory, under the instructions given by the

trial court, the jury could have erroneously relied on these collateral offenses to support a conviction under the joint criminal conduct theory.[3]

Because the district court instructed the jury to return a general verdict on each charge we are unable to determine whether the jury may have used any of these crimes as the separate, underlying public offense to convict Smith of assault with intent to inflict serious injury, willful injury causing serious injury, assault on a peace officer while using or displaying a dangerous weapon, or assault while participating in a felony under a joint criminal conduct theory. Therefore, we have no way of knowing whether the jury found Smith guilty of these crimes as a principal, an aider and abettor, or under the theory of joint criminal conduct. *See State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996). A verdict based on facts only legally supporting one theory for a conviction will not negate the possibility that the defendant was convicted under a theory containing legal error. *See State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006); *State v. Martens*, 569 N.W.2d 482, 485 (Iowa 1997). Therefore, even if we assume the record supports Smith's convictions for these crimes under the theory that Smith aided and abetted Dineen in the commission of these crimes, we are still required to reverse these convictions and remand the case to the district court for a new trial on these charges, because the general verdict returned by the jury did not reveal the basis for its guilty verdict.

In the future if a court is going to instruct the jury on the theory of joint criminal conduct, it should incorporate the elements of joint criminal conduct as set forth in this opinion, rather than instructing the jury with the general language of section 703.2. The district court should also instruct the jury on the separate public offense supporting a theory of joint

---

[3]By this statement we do not mean to imply that under an adequate record and proper instructions these crimes could not provide a basis for submitting the theory of joint criminal conduct.

criminal conduct. *See Sonnek v. Warren,* 522 N.W.2d 45, 47 (Iowa 1994) (stating "[i]t is the trial court's duty to see that a jury has a clear and intelligent understanding of what it is to decide"); *State v. Thomas,* 262 N.W.2d 607, 612 (Iowa 1978) (stating "[e]ven without a request, the court must instruct fully on all material issues, stating applicable legal principles supported by requisite evidence").

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Larson and Hecht, JJ., who take no part.