# IN THE COURT OF APPEALS OF IOWA

No. 15-0305
Filed April 6, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**FERMANI J. MALDONADO,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

A defendant appeals his convictions for first-degree robbery, first-degree burglary, and assault with intent to inflict serious injury. **AFFIRMED**.

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

Fermani Maldonado challenges his convictions for robbery in the first degree, burglary in the first degree, and assault with intent to inflict serious injury. He argues the State failed to prove his participation in these crimes amounted to aiding and abetting or joint criminal conduct. Because the jury could have reasonably concluded from the State's proof that Maldonado displayed a metal pipe to the victim, followed his accomplice's directions while inside the house, pointed out to his accomplice that the target of the assault was in the car, and accompanied his accomplice in fleeing the scene, we find substantial evidence to support both theories of Maldonado's vicarious liability for these offenses. Because Maldonado does not challenge the marshalling instructions, asks only for reversal of his convictions, and does not seek a remand for a new trial based on the general verdicts, we affirm.

## I.    Facts and Prior Proceedings

In broad daylight on June 23, 2014, thirty-two-year-old Tyree Smith kicked in the side door of Accia Parker's house, put a gun to her forehead, and yelled: "Where is the money?" At first, Parker believed she was the victim of a prank. But when she saw the second intruder, sixteen-year-old Maldonado, standing in the doorway and displaying a metal pipe, she realized the home invasion was not a joke. She did not recognize either intruder. A very frightened Parker screamed back at Smith: "What money?"

Parker's husband, Jeremiah Canada, was getting ready for work in the next room. Canada heard the break-in and jumped into a closet. Maldonado

followed Smith's directive to look for another person in the adjoining room but did not find Canada.

Parker's eighteen-year-old daughter, Carvona Henderson, was also inside the house at the time of the break-in. Henderson had stopped by to give Canada a ride to work. Henderson was scared by the sight of Smith's gun and dashed toward the car where her boyfriend, DaShawn Van Dyke, and their four-month-old baby were waiting. As she ran toward the car, she turned around and heard Maldonado say to Smith, "[T]here's DaShawn," while pointing at the car. Just then, Smith grabbed Henderson by the throat and threw her against the car. Henderson blacked out as Smith strangled her.

Meanwhile, from inside the car, Van Dyke also saw Maldonado point at him. Van Dyke recognized Maldonado from "seeing him around" but didn't know Smith. Just as Smith opened the car door, Van Dyke put his baby daughter behind him and pulled his own gun from beneath the car seat. Smith reached in and shot once, grazing Van Dyke's leg. In return, Van Dyke fired his semi-automatic weapon toward Smith, and Smith fell backward. Before he could fire again, Van Dyke's gun jammed. When Smith got back up, he fired multiple times toward the car, showering Van Dyke and the crying baby with shattered glass.

After the barrage of bullets, Maldonado urged Smith, "Come on. We have to go. We have to go." The pair ran down the driveway and into the woods. Van Dyke started to chase them, but Parker discouraged it, opting instead to call the police. When Henderson regained consciousness, she found her baby in the car, unharmed.

Smith and Maldonado were on foot just a few blocks away when Smith's wife called his cell phone. Maldonado answered, telling her Smith had been shot in the chest. Police arrested Smith and transported him to the hospital. Also a few blocks from the crime scene, police found a discarded metal pipe that matched the description of the one carried by Maldonado. Police later arrested Maldonado after Parker and Henderson identified him in photographic arrays.

The State charged Maldonado in a three-count trial information, alleging he committed or aided and abetted the commission of (1) robbery in the first degree, a class "B" felony, in violation of Iowa Code sections 711.1 and 711.2 (2013); (2) burglary in the first degree, a class "B" felony, in violation of sections 713.1 and 713.3; and (3) attempt to commit murder, a class "B" felony, in violation of section 707.11. Maldonado's four-day jury trial occurred in December 2014. For all three offenses, the district court instructed the jury on the alternative theories that Maldonado acted as the principal, as an aider and abettor, or engaged in joint criminal conduct. The jury returned guilty verdicts on the charged offenses of first-degree robbery and first-degree burglary. On the third count, the jury acquitted Maldonado of attempted murder, but returned a guilty verdict on the lesser-included offense of assault with intent to inflict serious injury, in violation of section 708.2(1). The district court imposed concurrent sentences for a total period not to exceed twenty-five years.

## II.    Standard of Review

When faced with a challenge to the sufficiency of the evidence, we review for correction of legal error. *State v. Tyler*, 873 N.W.2d 741, 746 (Iowa 2016). We regard the evidence in the light most favorable to the State and will undo the

jury's work only if the record lacks substantial evidence in support of the guilty verdict. *Id.* at 746-47. That "favorable light" includes making all legitimate inferences which may fairly be deduced from the evidence offered. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We will consider the evidence to be substantial if it can convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.* Our assessment looks to both inculpatory and exculpatory evidence in the record. *Id.* Our standard of review of verdicts in criminal cases recognizes the jury may reject certain evidence and credit other evidence. *Id.*

### III. Analysis of Vicarious-Liability Theories

At trial, Maldonado moved for judgment of acquittal, contesting the State's theories of aiding and abetting and joint criminal conduct. On appeal, he frames the issue as follows: "[W]hether Maldonado aided and abetted or engaged in joint criminal conduct with Tyree [Smith] when [Smith] burglarized Parker's home, robbed Parker, and assaulted Van Dyke?" Maldonado's challenge requires us to examine the two types of vicarious liability countenanced by Iowa statutes where accomplices are considered to be equally as culpable as principals. *See* Iowa Code §§ 703.1 (aiding and abetting),[1] 703.2 (joint criminal conduct).[2] Depending

---

[1] Iowa Code section 703.1 provides:
> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

[2] Iowa Code section 703.2 provides:
> When two or more persons, acting in concert, knowingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom, and

upon the facts of the prosecution, it may be appropriate for the district court to instruct the jury on both theories. *State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994). We will consider each theory in turn.

## A. Aiding and Abetting

Maldonado aided and abetted Smith if he assented to or approved of Smith's criminal actions either by active participation or by encouraging them in some manner before or during their commission. *See Tyler*, 873 N.W.2d at 750. If the State proved nothing more than Maldonado's knowledge of the crime or proximity to the crime scene, the record would lack sufficient evidence of aiding and abetting. *See State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000).

Maldonado asserts the State proved only that he was present at the scene when Smith, his older cousin, broke into Parker's residence, demanded money, and then assaulted Van Dyke. Parker acknowledged Maldonado said nothing inside the house, and while she remembered Maldonado holding a "silver pole" she did not testify that he brandished it in a threatening manner. Maldonado also contends "if he was truly aiding Tyree in the burglary," he would have opened the closet door to pull Canada out of his hiding place. As for informing the shooter— "there is DeShawn"—Maldonado contends it is "unknown" what he intended by this "recognition statement."

A reasonable jury could infer from Maldonado's conduct and statements that he actively participated in or, at a minimum, encouraged Smith's commission

---

each person's guilt will be the same as that of the person so acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

of the burglary, robbery, and assault. Maldonado entered Parker's home with Smith. Maldonado stood in the door holding a metal pipe so that it was visible to the victim while Smith demanded money at gunpoint. He swept through the adjoining bedroom at Smith's behest to check for another occupant. Maldonado then went with Smith to the driveway, where he pointed to and named the eventual shooting victim. After Smith was shot, Maldonado urged that it was time to leave, and the pair fled together. During their flight, Maldonado answered Smith's phone and told Smith's wife about the shooting, also giving her directions to their location. Evidence of Maldonado's "presence, companionship, and conduct" before and after the commission of the offenses was enough from which the jury could infer his active participation in the crimes. *See State v. Hearn*, 797 N.W.2d 577, 581 (Iowa 2011). We conclude the State presented substantial evidence supporting the aiding-and-abetting alternative.

### B. Joint Criminal Conduct

Maldonado engaged in joint criminal conduct if—acting in concert with Smith—he knowingly participated in one crime, and a second, reasonably-foreseeable crime resulted from their conduct in furtherance of the first offense. *See State v. Rodriguez*, 804 N.W.2d 844, 852 (Iowa 2011).

Maldonado claims the State did not offer evidence he *acted together* with Smith or that he *knowingly participated* in the crimes of robbery in the second degree or burglary in the second degree. But as the State argues on appeal, the jury was free to accept any of a number of permutations regarding the concerted acts of Smith and Maldonado. For instance, the evidence supported a conclusion that Maldonado committed the offenses of second-degree robbery

and second-degree burglary—either as a principal or aider and abettor—and that in the course of committing those offenses, Smith committed acts that elevated those crimes to first-degree robbery and first-degree burglary. It would be reasonably foreseeable that first-degree robbery could result from an armed home invasion when the accomplice started demanding money from the home's occupant. Concomitantly, it would be reasonably foreseeable that acts in furtherance of the planned robbery could result in first-degree burglary. In addition, the jury could have concluded the assault of Van Dyke in the driveway was a reasonably foreseeable consequence of carrying out the robbery and burglary when one of the home's occupants was running toward the car. *See State v. Jefferson*, 574 N.W.2d 268, 277-78 (Iowa 1997) (embracing joint-criminal-conduct theory to uphold separate assault on convenience store clerk that could have been reasonably expected during planned robbery).

We conclude the State's evidence supports both vicarious-liability theories for all three offenses.

## IV.    Remedy

Finally, we must consider the appropriate remedy in this case. While Maldonado's appellate brief vigorously challenges the State's evidence in support of aiding and abetting and joint criminal conduct, it does not advance any analysis regarding the insufficiency of the State's proof that Maldonado acted as the principal in the offenses. Accordingly, the State does not offer a counter argument regarding his liability as the principal in the crimes. Maldonado's only mention of his role as principal appears in the appellant brief's final paragraph:

> [T]here was insufficient evidence that Maldonado was guilty by means of aiding and abetting or joint criminal conduct for the offenses burglary in the first degree, robbery in the first degree, or assault with intent to inflict serious injury. There was no evidence of Maldonado acting as the principal in any of the three offenses. Therefore, Maldonado's judgment and sentence must be reversed.

When an appellant has demonstrated that one of several theories of liability submitted to the jury has not been proved and the jury received only a general verdict form, our supreme court has decided the appropriate remedy is to reverse the conviction and remand for a new trial. *See Tyler*, 873 N.W.2d at 752-53 (finding substantial evidence to prove defendant's liability as the principal and as an aider and abettor but also finding joint-criminal-conduct theory was not supported by the evidence). The *Tyler* court determined a new trial was necessary because the general verdict forms provided "no way of knowing whether the jury found [the defendant] guilty . . . as a principal, an aider and abettor, or under the theory of joint criminal conduct." *Id.* at 753 (quoting *State v. Smith*, 739 N.W.2d 289, 295 (Iowa 2007)). The *Tyler* court also quoted *State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996), where the challenge was to the marshalling instructions. *Id.* at 754. The *Hoegrefe* court determined the district court erred in giving a marshalling instruction allowing the jury to consider three theories of liability with a general verdict form when only one of the theories was supported by the evidence. 557 N.W.2d at 881; *see also State v. Smith*, 739 N.W.2d 289, 293-95 (Iowa 2007) (remanding for new trial where trial court erroneously overruled defense objection to jury instruction on joint criminal conduct).

In contrast to *Hoegrefe, Smith*, and *Tyler*, Maldonado asks only for an outright reversal of his convictions. He does not present any argument concerning the error caused by instructing the jury on multiple theories and use of only a general verdict form. Further, Maldonado did not object to the configuration of the marshalling instructions at trial or request a different form of verdict to correspond with the different theories presented, nor does he do so on appeal. It is the instructional error in the alternative-theory cases, in combination with the use of a general verdict form, that requires an appellate court to remand for a new trial. *See State v. Mays*, 204 N.W.2d 862, 864-65 (Iowa 1973) (noting submission of an instruction unsupported by the evidence is generally prejudicial). Maldonado does not allege such error, nor does he request a new trial based on faulty marshalling instructions or general verdict forms. Accordingly, we do not grant the relief afforded in *Tyler*, *Smith*, and *Hoegrefe*.

**AFFIRMED.**