# IN THE COURT OF APPEALS OF IOWA

No. 16-0973
Filed August 2, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JESSIE L. MATHEWS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

        A defendant challenges his judgment and sentence for robbery in the second degree. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Jessie Mathews challenges his conviction for robbery in the second degree. On appeal, he contends the State failed to offer adequate evidence to corroborate the testimony of several accomplices. In addition, Mathews argues his trial counsel was ineffective for failing to object to a joint-criminal-conduct jury instruction. Because we find sufficient corroboration and no prejudice from the submission of the instruction, we affirm.

## I.     Facts and Prior Proceedings

Between 10:00 and 11:00 p.m. on October 16, 2014, S.Y. closed the Waterloo grocery store she managed and walked to the parking lot. Because she was talking to her sister on the phone, S.Y. didn't notice the man with a gun standing near her car until she was about to get inside. He pointed the gun at S.Y., forced her to kneel, and took her keys, phone, and the money she was carrying from the store. The man moved toward a vehicle at a nearby street corner, and S.Y. ran for help.

Police eventually arrested Mathews, along with four other individuals—Jimmy Robinson, Tammy Robinson, Jutaveus Collett, and Trivansky Swington—for the crime, and the State charged all five with second-degree robbery, a class "C" felony, in violation of Iowa Code section 711.3 (2014). Deadlocked juries prompted two mistrials. The matter came to trial for a third time on April 5, 2016. By that time, all of the defendants but Mathews and Jimmy had entered into plea agreements. Tammy, Swington, and Collett agreed to testify as part of their plea agreements. In addition, the State read into the record the prior testimony of

Jimmy, who had testified for the State at the first trial but refused to testify at the April 2016 trial.

Mathews's co-defendants detailed the events leading up to the robbery. Tammy had worked at S.Y.'s grocery store, but in early October 2014, after S.Y. caught Tammy stealing cash and merchandise, S.Y. effectively ended Tammy's employment and withheld a portion of her last paycheck. S.Y. also fired Swington, who Tammy had hired at the grocery store without S.Y.'s knowledge. Short on cash and angry, Tammy and her husband, Jimmy, began planning to burglarize the grocery store with Swington and Collett, who the Robinsons met through Swington. Tammy would go to the store, open a side door, and leave it unlatched to allow the others to enter later in the evening. Mathews, the brother of Collett's girlfriend, Ariel, was the last to join the schemers. According to Swington, Mathews enthusiastically accepted Ariel's invitation to "hit a lick," which Swington explained meant to "rob or burglarize."

Events did not unfold as originally planned. Tammy opened the store's side door and returned home. But Collett, Jimmy, and Mathews, the three who were plotting to enter the store, abandoned the pursuit before stealing anything.[1] Collett returned from the grocery store with Jimmy and Mathews, told Swington the door was closed, and directed Swington to "[g]o get Betsy," the nickname for Swington's BB gun that resembled a real small caliber handgun. Jimmy remembered Mathews saying: "[M]ight as well rob the girl." When Swington

---

[1] According to Collett and Jimmy, the three successfully entered the store but left a few minutes later. Jimmy explained it "[d]idn't feel right." The surveillance video from the store, which was admitted at trial, ended before anyone entered through the door Tammy had opened. S.Y. testified she viewed the security-camera footage from the date of the incident but did not see anyone enter through the door.

returned, Mathews took charge of the gun and, along with Jimmy and Collett, walked toward the store to rob S.Y. Swington stayed with his vehicle, acting as a lookout, and when the three men returned with cash, he drove them to the apartment where Mathews had been staying with his mother and sister. Collett, Swington, Jimmy, and Mathews split the money amongst themselves, each netting approximately $100.

Police arrived at the robbery scene and spoke with S.Y. and two employees of the grocery store. After learning of Tammy's presence in the store that evening, police officers interviewed her. Tammy implicated Swington, Collett, and Jimmy; Jimmy added Mathews to the list. Police officers located Collett and Mathews in the Mathews's apartment. They later discovered S.Y.'s cell phone and Swington's BB gun in an empty apartment across the hall. All of the suspects admitted involvement with the robbery except Mathews.

After the close of the evidence, the court instructed the jury it could find Mathews guilty either as a principal, an aider and abettor, or under a joint-criminal-conduct theory. In a general verdict, the jury found Mathews guilty of second-degree robbery. The court sentenced Mathews to an indeterminate ten-year term of incarceration. Mathews now appeals his judgment and sentence.

## II. Standard of Review

Because of their basis in the Sixth Amendment, we review ineffective-assistance-of-counsel claims de novo. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). To prevail, Mathews must prove by a preponderance of the evidence both (1) his trial counsel failed to perform an essential duty and (2) that failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687–

88 (1984). Failure to prove either prong is fatal to an ineffective-assistance claim. *See State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006). We generally preserve ineffective-assistance claims for postconviction-relief proceedings; only when the record is adequate will we resolve such claims on direct appeal. *See State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015).

### III.    Analysis

### A.  Sufficiency of the Evidence to Corroborate Accomplice Testimony

Mathews first argues the district court should have granted his motion for judgment of acquittal "based upon the State's failure to prove identification where there was insufficient evidence to corroborate alleged accomplices' testimony." Recognizing the possibility his trial counsel's motion lacked the requisite specificity to preserve the issue for our review, Mathews alternatively frames his argument as an ineffective-assistance-of-counsel claim.

To preserve error on a motion to acquit, the defense must specifically identify the elements lacking sufficient evidence. *State v. Schories*, 827 N.W.2d 659, 664 (Iowa 2013). Mathews's trial counsel made a general motion for directed verdict at the close of the State's case. The court denied the motion. Then, at the close of evidence, counsel renewed the motion, elaborating that the evidence was insufficient for the jury to find "all of the elements have been proven beyond a reasonable doubt to either the main charge or any of the lesser-includeds, that the identity has not been established, or the identification is inherently tainted and flawed." He did not mention corroboration of accomplice testimony in either motion.

Mathews argues trial counsel's second motion preserved error on his sufficiency challenge. We disagree. Although Mathews generally raised the issue of identity in his second motion, he did not challenge the corroboration of the accomplices' testimony. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996) (holding only grounds argued in motion for judgment of acquittal are preserved for appellate review). Moreover, neither of the district court's rulings addressed the corroboration issue. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (explaining "issues must ordinarily be both raised and decided by the district court before we will decide them on appeal").

But as the State notes, "the question of preservation hardly matters" because if counsel "failed to preserve a valid motion for acquittal" on this ground, "[i]t would surely be ineffective under the standards announced in *Strickland*." *Schories*, 827 N.W.2d at 664–65. Accordingly, to resolve this issue, we need consider only the prejudice prong—whether a reasonable probability existed that a challenge to the corroboration of accomplice testimony would have changed the outcome. If the State offered corroborating evidence independent of the accomplice testimony, trial counsel's failure to challenge the adequacy of the corroboration cannot be considered prejudicial. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004).

Iowa Rule of Criminal Procedure 2.21(3) provides:

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. Corroboration of the testimony of victims shall not be required.

Corroboration "need not be strong and need not be entirely inconsistent with innocence. . . . The requirement of corroborative evidence is met 'if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime.'" *State v. Ware*, 338 N.W.2d 707, 710 (Iowa 1983) (citation omitted). While the existence of corroborative evidence is a legal question for the court, its sufficiency is a fact question for the jury. *State v. Doss*, 355 N.W.2d 874, 880 (Iowa 1984).

At trial, the State relied on the incriminating testimony of four accomplices to the crime.[2] *See State v. Barnes*, 791 N.W.2d 817, 823 (Iowa 2010) (noting a person is considered an accomplice "if he or she could be charged and convicted of the same offense for which the defendant is on trial"). On appeal, the State claims testimony provided by two non-accomplices—complainant, S.Y., and Monika Bray, Mathews's paramour—was sufficient to satisfy rule 2.21(3).

Mathews first attacks the credibility of S.Y.'s testimony. Immediately following the robbery, S.Y. told the police she could not see her assailant's face. In an interview a few days later, an officer showed S.Y. pictures of Mathews and Collett, and when S.Y. asked the officer who the man with the gun had been, he indicated he thought it was Mathews. At a deposition on May 7, 2015, S.Y. initially maintained she could not identify the gunman. Counsel for Collett pressed the issue, asking: "And you can't look at the gentlemen in the room and tell us that this person was the one with the weapon? Or can you?" S.Y. responded: "I guess" and pointed at Mathews. Then at the April 2016 trial, S.Y.

---

[2] The parties agree Tammy, Jimmy, Swington, and Collett were accomplices.

confidently identified Mathews as the individual who robbed her. Citing the evolution of her identification testimony over time and the suggestive comments of the law enforcement officer, Mathews contends S.Y.'s testimony was "clearly tainted."

But even if we were to accept Mathews's argument and disregard S.Y.'s identification testimony, *but see State v. Cuevas*, 281 N.W.2d 627, 631 (Iowa 1979) (rejecting argument "corroboration testimony was weak and suspect" and reasoning "we do not purport to assess the credibility of the witnesses; that is for the jury"), we would find Mathews's phone call and letters to Bray corroborated the accomplices' testimony, *see State v. Douglas*, 675 N.W.2d 567, 572 (Iowa 2004) (holding "a defendant's out-of-court confessions and admissions may corroborate the testimony of an accomplice"). Bray—who was pregnant with Mathews's child in October 2014—testified Mathews—who was unemployed—called her between 10:30 and 11:00 p.m. on the evening of the robbery, just a few hours after she had last seen him, to say "he was going to come see [her] in the morning and that he would give [her] some money." And after Mathews's arrest, he wrote letters to Bray, asking her to tell his mother and sister what to say at their depositions to help him establish an alibi. Mathews also wrote of more general regrets, admitting: "I am stupid and I fucked up real bad. I should've been taking care of my responsibilities but instead I made stupid decisions and now I have to deal with the consequences. I feel like an idiot because I let my family down." He continued: "I guess I put myself in this situation so I can't feel sorry for myself."

Mathews argues his letters and phone calls to Bray were too ambiguous to connect him to commission of the robbery. We disagree. Although Mathews's admissions to Bray would not have been sufficient alone to support a conviction, they lend credence to the testimony of the accomplices that Mathews actively participated in the robbery and benefited from it. Because Bray's testimony corroborated the accomplices' testimony, a more specific motion for judgment of acquittal would have been meritless.[3] It was the responsibility of the jury to decide the weight and credibility of that corroborating evidence. Accordingly, Mathews's first ineffective-assistance claim fails on the prejudice prong.

### B. Joint Criminal Conduct

In addition to asking the jury to decide if Mathews acted either as the principal or as an aider and abettor[4] in the robbery, the district court also instructed the jury regarding joint criminal conduct as follows:

> When two or more persons act together and knowingly commit a crime, each is responsible for the other's acts during the commission of the crime or escape from the scene. The defendant's guilt is the same as the other persons' unless the acts could not reasonably be expected to be done in aiding the commission of the crime.

---

[3] Although not urged by the State on appeal, we also find corroboration in the fact police located Mathews at his home, with Collett, just across the hall from physical evidence linked to the crime—the gun and S.Y.'s cell phone. *See State v. Palmer,* 569 N.W.2d 614, 616 (Iowa Ct. App. 1997) (stating independent evidence that a defendant is in the company of another perpetrator close in time to the crime corroborates accomplice testimony).

[4] The court instructed the jury that aiding and abetting

> means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

Mathews argues his trial counsel was ineffective for failing to object to the instruction on either of two grounds: (1) the instruction was incomplete and (2) the State's evidence of joint criminal conduct was insufficient to support submission of the instruction. We address his grounds in reverse order.

To prove joint criminal conduct, the State was required to demonstrate four elements: (1) Mathews acted in concert with another, (2) Mathews knowingly participated in a public offense,[5] (3) a different crime was committed by another participant in furtherance of Mathews's offense, and (4) the commission of the different crime was reasonably foreseeable. *See State v. Smith*, 739 N.W.2d 289, 294 (Iowa 2007) (citing Iowa Code § 703.2). Mathews challenges the proof of the third element, arguing trial counsel should have objected to the submission of the joint-criminal-conduct instruction because the robbery was not an unplanned crime committed in furtherance of the initial offense but, rather, a separate planned offense. *See State v. Tyler*, 873 N.W.2d 741, 752 (Iowa 2016) (explaining joint criminal conduct requires the second crime to be unplanned but reasonably expected to occur in furtherance of the first crime).

We agree the record did not support the submission of an instruction on joint criminal conduct. If the jurors believed S.Y.'s testimony identifying Mathews as the gunman, he acted as the principal. If the jurors rejected her identification testimony but believed Mathews was otherwise involved in the robbery (for instance, as a lookout or a driver), his involvement fell within the definition of aiding and abetting. The State presented no evidence that Mathews believed an

---

[5] Under Iowa Code section 702.13, a person is considered "'participating in a public offense' . . . whether the person is successful or unsuccessful in committing the offense."

accomplice with the gun shared only his intent to commit theft or burglary and, unbeknownst to Mathews, proceeded to commit the unplanned but foreseeable crime of robbery. Once Swington fetched "Betsy," all evidence pointed to Mathews's participation as either the principal or as an aider and abettor. No version of events suggested another person or persons committed the different crime of robbery without Mathews's knowing approval and agreement to its commission.

But Mathews is unable to show he was prejudiced by the submission of the joint-criminal-conduct instruction to the jury. To establish *Strickland* prejudice, Mathews must show "counsel's alleged deficiency undermines our confidence in the verdict and therefore resulted in prejudice entitling him to a new trial, regardless of whether his claim would require reversal if it were before us on direct appeal." *Thorndike*, 860 N.W.2d at 321–22. Our confidence in the verdict is not undermined here because we see no opportunity for the jury to have found Mathews guilty based on anything other than his own conduct as a principal or as an aider and abettor of the robbery. *See Smith*, 739 N.W.2d at 294. The prosecution did not present facts to the jury that would have prompted a finding of guilt under the joint-criminal-conduct theory. The State maintained throughout the trial that Mathews was the principal or, alternatively, an aider and abettor.

We are guided by our supreme court's analysis in *State v. Shorter*, 893 N.W.2d 65, 75–76 (Iowa 2017), where the trial court wrongly instructed the jury on the theory of joint criminal conduct when there was no substantial evidence Shorter acted in concert with an accomplice who first struck the murder victim. Nonetheless, the supreme court decided retrial was not required because

> [t]he only crime of Shorter's that could possibly support a joint criminal conduct theory for second-degree murder is participation in the group assault on Daughenbaugh prior to his death. If the jury found Shorter participated in the group assault on Daughenbaugh, however, he would also necessarily be guilty of second-degree murder based on liability as a principal or under an aiding and abetting theory.

*Shorter*, 893 N.W.2d at 76 (citing *State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998)). Similarly here, if the jury found Mathews participated in a group decision to "bring a gun into the situation" as the State argued at trial, he was necessarily guilty of robbery based on liability as a principal or under an aiding and abetting theory. We find no prejudice resulted from counsel's failure to object to submission of the joint-criminal-conduct instruction.

On the issue of the accuracy of the joint-criminal-conduct instruction, Mathews contends his trial counsel was remiss in allowing the district court to instruct only with the general wording of section 703.2 without specifying the separate public offense in which Mathews participated. *See Smith*, 739 N.W.2d at 295. We agree—if the instruction had been supported by the evidence—trial counsel should have agreed to the State's proposal for more specific language. The instruction given by the district court was an incomplete statement of the law under *Smith*. But like Mathews's complaint about insufficient proof to submit the joint-criminal-conduct instruction in the first place, we find no prejudice resulted from counsel's omission. Our confidence in the verdict is not undermined because the jury had no chance under any of the instructions to find Mathews guilty on any theory other than his own conduct—either in holding the gun on S.Y. or in knowingly aiding and abetting his compatriots in the robbery.

Accordingly, we reject Mathews's claim that the performance of his counsel requires a new trial.

**AFFIRMED.**