# IN THE COURT OF APPEALS OF IOWA

No. 17-1015
Filed December 5, 2018

**JACQUE DUKES,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, George L.

Stigler, Judge.

Jacque Dukes appeals from the denial of his application for postconviction

relief. **AFFIRMED.**

Angela Campbell of Dickey & Campbell Law Firm, PLC, Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee State.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Jacque Dukes appeals from the denial of his application for postconviction relief (PCR). Because Dukes failed to prove trial counsel breached an essential duty resulting in prejudice, we affirm.

The underlying facts are set out in *State v. Dukes*, No. 12-1552, 2013 WL 6405328, at *1-2 (Iowa Ct. App. Dec. 5, 2013):

> Belinda Robinson, [Dukes's] former girlfriend, was staying with Alonzo Henderson in a trailer located in Cedar Falls, Iowa. She discovered that Henderson was expecting a large shipment of either marijuana or cocaine around January 27, 2011. Robinson decided to steal the drugs and contacted a friend, Crystal Cooper, and the defendant. The defendant, Cooper, and Cooper's boyfriend, Lamario Stokes, made a trip to Cedar Falls to case the trailer.
> On January 26, Robinson notified Cooper and [Dukes] that the shipment had arrived. [Dukes], Cooper, Stokes, and Corey Moore, a friend of [Dukes], drove to Waterloo to a location near Henderson's trailer. Robinson came home from work and entered the trailer. A little later, Henderson arrived at the trailer with two other men, and the three men began unwrapping bundles of marijuana. Robinson informed the men she would get cigarettes and plastic bags, and left in the car in which the men had arrived.
> While on the errand, Robinson contacted [Dukes], with whom she had been in telephone contact all afternoon. Robinson drove to where [Dukes] and the others were waiting in [Dukes's] car, and they devised a plan to lure the visitors out of the trailer. The visitor's car was left in a Hy–Vee parking lot. Robinson joined up with [Dukes] and the others, and told the owner of the car that the car had run out of gas and had been left in the Hy–Vee parking lot. She further told him she had gotten a ride with a friend. The two visitors left the trailer to retrieve the car. [Dukes], Stokes, and Moore exited [Dukes's] car and entered the trailer.
> Henderson did not recognize the intruders. He recalled that two guns were trained on him. As he tried to walk away and enter his bedroom, he was struck in the head with a gun and a struggle ensued. A second man hit Henderson in the head, and eventually shots were fired, hitting Henderson twice. All three intruders hurried back to [Dukes's] car, and [Dukes] and Moore threw two blue laundry bags into the back of the car.
> The group then went to the apartment of Moore's girlfriend, Bridget Johnson, and divided up the marijuana contained in the

laundry bags. There was fifty-seven pounds of marijuana, and [Dukes] took fourteen pounds as his share.

[Dukes] later told Robinson that during the robbery he hit Henderson with a gun, but the gun flew out of his hand, and he believed it went under the bed. He then hit Henderson with a laptop computer. The police investigation after the incident found a pistol under the bed and a laptop computer on the floor nearby. [Dukes's] fingerprints were not found on the gun. Cooper overheard Moore say he had shot Henderson, and [Dukes] mentioned getting into a struggle with Henderson, hitting him in the face with a gun, which he dropped and left at the trailer.

. . . .

Moore was eventually arrested for speeding, and he had in his possession a gun, which was proved to have fired the shots that struck Henderson. Also seized from Moore's car was ammunition matching the ammunition found in the gun found on Henderson's floor. Additionally, cash and a small amount of marijuana were seized from the car.

Johnson, Robinson, and Cooper all testified for the prosecution at Dukes's trial. *Dukes*, 2013 WL 6405328, at *2. Dukes testified that he went to the trailer to inspect the drugs for a possible purchase and was not involved in the planning or execution of the robbery. *Id.* He asserted Henderson picked up a gun and charged him, they wrestled, and the gun flew out of Henderson's hand.

Dukes was convicted after a jury trial of robbery in the first degree, burglary in the first degree, willful injury causing serious injury, and possession of marijuana with intent to deliver while in the immediate possession and control of a firearm. This court found the verdicts were not contrary to the weight of the evidence, rejected some claims of ineffective assistance of counsel, did not address others, and affirmed the convictions on appeal. *Id.* at *3. By an order dated January 31, 2014, our supreme court denied Dukes's application for further review.

Dukes then filed a PCR application, asserting trial counsel's performance was constitutionally defective in a number of ways. The PCR court rejected his claims and Dukes now appeals.

Dukes asserts trial counsel was ineffective (1) in failing to challenge the guilty verdicts for first-degree robbery and willful injury and the applicable jury instructions based on joint criminal conduct, (2) in failing to challenge the jury instructions on assault and corroboration necessary to convict on accomplice testimony, (3) in introducing Dukes's criminal history, and (4) in failing to strike a juror who was related by marriage to the prosecutor. Because Dukes's claims are constitutional in nature, our review is de novo. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

To prevail on his claim of ineffective assistance of counsel, Dukes must prove by a preponderance of the evidence that (1) counsel breached an essential duty and (2) prejudice resulted. *See id.* at 866. "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Id.* (citation omitted).

Dukes argues, "No evidence was offered by the State that showed there was any sort of strategy" of trial counsel. But, our analysis of his ineffective-assistance claim begins with the presumption that the attorney performed competently. *Id.* Dukes had the burden to demonstrate his trial attorney performed below the standard demanded of a "reasonably competent attorney." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Selection of the primary theory or theories of defense is a tactical matter." *Schrier v. State*, 347 N.W.2d 657, 663 (Iowa 1984). Because we presume counsel was competent and employed a reasonable

defense strategy, it was not the State's burden to show trial counsel's strategy was reasonable but Dukes's burden to show it was not.

*A. Joint criminal conduct instruction and failure to move for judgment of acquittal for lack of evidence.* Upon our de novo review, we find no merit in Dukes's contention that counsel was ineffective for failing to object to the joint-criminal-conduct jury instructions.[1] In *State v. Tyler*, 873 N.W.2d 741, 752 (Iowa 2016), the court noted joint criminal conduct contemplates two acts: the crime in which the actor has knowingly participated and a second unplanned crime that reasonably could be expected to occur in furtherance of the crime. Dukes engaged in joint criminal conduct if—acting in concert with another—he knowingly participated in one crime, and a second, reasonably-foreseeable crime resulted from their conduct in furtherance of the first offense.

With respect to the claim of instructional error, Dukes argues the instructions were circular and confusing to the jury, relying on *State v. Smith*, 739 N.W.2d 289, 294-95 (Iowa 2007).[2] We need not address the duty prong of Dukes's ineffectiveness claim however because Dukes has failed to prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 687.

---

[1] The instructions as to robbery and willful injury allowed the jury to consider Dukes's liability as a principal, an aider or abettor, or engaging in joint criminal conduct.

[2] In *Smith*, the court found "there was insufficient evidence to submit to the jury the State's claim that Smith was guilty of the crimes committed by Dineen when he shot the deputy by reason of Smith's joint criminal conduct," noting a "logical fallacy" in the State arguing that "knowingly participating in the crime of assault on a police officer while using or displaying a dangerous weapon is not a different crime to support a conviction for assault on a police officer while using or displaying a dangerous weapon." 739 N.W.2d at 294. Dukes's attempt to place himself in an analogous posture is unconvincing.

There was very strong evidence Dukes acted as a principal or an aider and abettor in the robbery and willful injury of Henderson. *See State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998) ("[T]he giving of a joint criminal conduct instruction in instances in which the alleged multiple participants are either principals or aiders and abettors in the same crime does not require reversal if there is no opportunity for the defendant to have been found guilty based on anything other than his own conduct as a principal or an aider and abettor of the crime with which he is charged.") Dukes, Stokes, and Moore—dressed in black clothing and wearing masks—entered Henderson's trailer to steal marijuana after Robinson lured the other two occupants from the trailer, leaving Henderson the sole occupant. Robinson suggested that if Henderson gave them trouble, they should "rough him up." Robinson had already determined there were no weapons in the trailer at Dukes's request. Two men pointed guns at Henderson. Henderson turned and fled to his bedroom in the back of the trailer. Dukes followed Henderson into the back at which point the two physically struggled. Dukes struck Henderson in the head with a gun. When Dukes lost his grip on the gun and it fell under Henderson's bed, Dukes grabbed a laptop computer and struck Henderson in the head with the computer. After Dukes left the room, Moore shot Henderson twice.

We conclude trial counsel had no duty to object to the jury instructions applying the theory of joint criminal conduct set forth in Instruction No. 45 because there was substantial evidence to support the use of the instruction. Moore shot Henderson while Dukes and Henderson acted together and knowingly participated in a burglary. The shooting of Henderson furthered the crime of burglary and constituted a different crime, the offense of willful injury causing serious injury, and

the commission of such offense was reasonably to be expected. We agree with the district court that a juror with reasonable intellect would understand the instructions and not be confused.

Even if we concluded joint criminal conduct does not apply under these facts and counsel was under a duty to object to the instructions or move for judgment of acquittal, as we have noted, there was strong evidence that Dukes participated in the crimes as a principal or aider and abettor. Accordingly, we are convinced the result of the trial would not have been different had counsel objected to the joint criminal conduct instructions or moved for a judgment of acquittal on this theory. *See Lamasters*, 821 N.W.2d at 866 ("A showing that the error 'conceivably could have influenced the outcome' of the proceeding is not enough." (citation omitted)).

*B. Assault instruction.* Dukes next asserts counsel should have objected to the assault jury instruction because it failed "accurately portray the element of specific intent." Dukes then states that "under this instruction, the jury could have convicted Dukes without finding any specific intent." No other prejudice analysis is made, and this statement is basically equivalent to asserting the error "could conceivably have influenced the outcome," which is insufficient to establish ineffective assistance of counsel. *See id.* This is particularly true because the evidence of an intentional assault is strong.

*C. Accomplice instruction.* We find no prejudicial error arose from the jury instruction on accomplice testimony requiring corroborative evidence. Dukes complains about one sentence in the instruction, "A small amount of corroborative evidence is all that is required," but this sentence is a correct statement of the law. *State v. Vesey*, 241 N.W.2d 888, 890 (Iowa 1976) ("The existence of corroborative

evidence is a question of law for the court, but its sufficiency is ordinarily a question of fact for the jury. It need not be strong. *Any* corroborative evidence which tends to connect the accused with the commission of the crime and thereby supports the credibility of the accomplice is sufficient." (emphasis added)); *see also State v. Palmer*, 569 N.W.2d 614, 616 (Iowa Ct. App. 1997) ("It is firmly grounded in Iowa case law that a small amount of corroborative evidence is all that is required."). Thus, trial counsel did not breach an essential duty in failing to challenge the instruction. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Counsel has no duty to raise an issue that has no merit.").

*D. Prior conviction.* Dukes next claims it was ineffective assistance for trial counsel to solicit evidence of Dukes prior marijuana conviction.[3] The State argues the issue is not preserved for review because the district court did not make a ruling on it. *See Meier v. Senecaut*, 641 N.W.2d 532, 538 (Iowa 2002) ("Our preservation of error doctrine requires a party to make a request for a ruling . . . ."). Dukes states he was essentially representing himself—though he had appointed counsel—and, citing a Minnesota court opinion,[4] "Iowa should adopt a rule that preservation of error requirements should be relaxed for the pro se petitioner." "We do not utilize a deferential standard when persons choose to represent themselves." *Kubik v. Burk*, 540 N.W.2d 60, 63 (Iowa Ct. App. 1995).

Dukes also asserts the State misled the PCR court when it stated the issue had "been addressed" on appeal. This statement is somewhat misleading. The

---

[3] Dukes again complains, "The State offered no testimony or evidence offering any explanation or evidence that this was some sort of strategic decision." The case of ineffectiveness was for Dukes to make, and we presume counsel was competent.

[4] *State v. Stufflebean*, 329 N.W.2d 314, 318 (Minn. 1983).

issue on appeal was the claim that "the district court abused its discretion when it allowed evidence of the defendant's prior crimes." *Dukes*, 2013 WL 6405328, at *1. The appellate court observed:

> The defendant's counsel filed a motion in limine to exclude the defendant's record of prior criminal convictions, crimes, and arrests, but it was agreed that admissibility would be determined later. In fact, the court never ruled on the issue. The defendant's own counsel, on cross-examination of Robinson, brought up the defendant's prior drug usage. In response to questions from his own counsel, the defendant testified as to his criminal record involving drugs, presumably in support of his defense that he was a user and was at Henderson's trailer for the purpose of checking out, and possibly purchasing, drugs.

*Id.* at *2. Thus, the court "was never required to rule on the admissibility of" Dukes's prior criminal record, so no abuse of the court's discretion occurred.

We choose to address the merits of Dukes's claim that counsel was ineffective in eliciting the testimony. The State argues trial counsel could have had a strategic reason for eliciting the testimony—including to bring out Robinson's statement that while Dukes may have sold drugs in the past she had not known him to be violent in doing so; and to give some credence to Dukes's claim that he had to be present at the scene to determine the quality of the drugs, the ability to do so having been gained by his prior history with marijuana. Moreover, "the State could—and would—have attempted to impeach Dukes with the fact he was previously convicted of a felony once he took the stand to testify."

Dukes responds, "The State offered no testimony or evidence offering any explanation or evidence that this was some sort of strategic decision." We reiterate, the case of ineffectiveness was for Dukes's burden, and we presume counsel was competent. We conclude, in light of the strong evidence of guilt and

Dukes's own testimony about his presence at Henderson's trailer to purchase a large quantity of drugs, counsel reasonably may have determined eliciting the drug conviction testimony was reasonable.

We also note the trial court instructed the jury that a previous conviction could only be used to decide whether to believe the witness and the weight to give the witness's testimony. *See State v. Plaster*, 424 N.W.2d 226, 232 (Iowa 1988) ("It is only in extreme cases that such an instruction is deemed insufficient to nullify the danger of unfair prejudice.").

*E. Failure to strike juror*. Finally, Dukes claims counsel was ineffective for failing to strike a juror who was married to the prosecutor's cousin for cause or by peremptory challenge, inferring the juror was presumptively biased against him and deprived him of a fair trial. The PCR court did not err in rejecting this claim. Iowa Rule of Criminal Procedure 2.18, which sets out what constitutes "cause" to strike a juror does not cover the relationship here.[5] With respect to an alleged failure to use peremptory strike, "the Constitution only requires the defendant be tried before a fair and impartial jury." *State v. Mootz*, 808 N.W.2d 207, 221 (Iowa 2012). The prosecutor divulged during voir dire that he and the potential juror were related by marriage. The juror stated the relationship would not affect her judgment and she could render a fair and impartial verdict. Dukes and his attorney

---

[5] The PCR court ruled:

> There is nothing in the rules that I read under rule 218—2.18(5) that would give a challenge for cause. The closest would be sub D affinity or consanguinity within the fourth degree to the person alleged to be injured by the offense charged or whose complaint or at whose instance the prosecution was instituted or to the defendant to be computed according to the rule of civil law and [the prosecutor] was not the person who was a victim. He didn't institute the prosecution. And he's not related to the defendant. So I don't see there is any challenge for cause.

were aware of the relationship, did not ask additional questions, and made no objection.  The juror then testified at the PCR trial that at the time of the criminal trial she was married to the prosecutor's cousin, they had a cordial but not a close relationship, she saw him perhaps one or two times per year at family functions, and the relationship did not affect her ability to render an impartial verdict.  Dukes has failed to establish the juror was biased or that Dukes was prejudiced by the juror serving.

We affirm the denial of postconviction relief.

**AFFIRMED.**